The Board of Supervisors of Du Page County *et al.*

*v.*

The People, etc. *ex rel.* Willard Scott *et al.*

1.  Elections—*effect of an adjournment by the judges.*  Where the judges of election of a township, at an election to determine the question of removal of a county seat, took a recess of an hour at 12 o'clock, and went home to dinner, but it was not pretended that the adjournment was for any improper purpose, or that there was any tampering with the ballot box, or that there was any fraud or wrong of any sort committed or contemplated, or that any voter lost his vote in consequence thereof: *Held,* that this was no ground for rejecting the entire poll of the township.

2.  Same—*proof required of non-registered voter.*  The *oath* of a householder and registered voter, required to prove the qualification of a non-registered voter, is required to be in writing, or, in other words, the proof to be made by such witness must be an affidavit, so that the same may be preserved.

3. Where a non-registered voter simply files his own affidavit as required by the statute, but does not produce with it the affidavit of a householder and registered voter, the statute is plain that his vote shall not be received.

4. It appeared, upon the contest of an election on the question of removing a county seat, that various persons, whose names were not registered, were allowed to vote upon their own affidavit, without the production of the affidavit of a householder, but that, in fact, such householder was sworn to the printed affidavit printed on the same paper with that of the voter, and the magistrate affixed his *jurat* to the affidavit of the voter alone: *Held*, on reversal for another cause, that the parties should be allowed to show that the voters in question were, in fact, legal voters, and that the affidavits filed by them were, in fact, sworn to not only by them, but by the witnesses required by the statute.

APPEAL from the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

This was a proceeding in chancery, commenced by the appellees in the circuit court of DuPage county, to determine a controversy relating to the result of an election held in that county on a proposition for the removal of the county seat. A change of venue was had, and the cause transferred to the circuit court of Cook county. That court decreed in favor of the appellees, and from that decision an appeal was taken to this court.

Messrs. MILLER, FROST & LEWIS, for the appellants.

Messrs. BECKWITH, AYER & KALES, Mr. H. H. CODY and Mr. R. N. MURRAY, for the appellees.

Mr. CHIEF JUSTICE LAWRENCE delivered the opinion of the Court:

It is unnecessary to discuss the constitutional questions raised in the argument of this case, as the same questions were considered and decided in the case of *Supervisors of Knox County* v. *Davis,* 63 Ill. 405.

The appellants assign for error the decision of the court in rejecting the vote of the town of Winfield because the judges

of the election took a recess of an hour at 12 o'clock, and went home to dinner. It is not claimed that the adjournment was for any improper purpose, or that there was any tampering with the ballot box, or that there was any fraud or wrong of any sort either committed or contemplated. Neither does it appear that any voter lost the opportunity of voting.

The statute, however, positively forbids an adjournment; and the question is, what is the consequence of its violation in a case like the present, where there is neither fraud nor injury? Are the voters of the precinct, who have voted in good faith, to be practically disfranchised by the mistake of the judges of the election, or will the courts inquire whether the adjournment has been for a wrongful purpose, and, if no wrong appears and no injury is done, leave the officers to such penalty as the law imposes, but retain the votes?

We can not distinguish this case, in principle, from that of *Piatt* v. *The People*, 29 Ill. 72, where the question was as to the effect of receiving votes after 5 o'clock, that being the hour at which the law required the polls to be closed. The court there used the following language :

"The rules prescribed by law for conducting an election are designed chiefly to afford an opportunity for the free and fair exercise of the elective franchise, to prevent illegal votes and to ascertain, with certainty, the result. Such rules are directory merely; not jurisdictional or imperative. If an irregularity, of which complaint is made, is shown to have deprived no legal voter of his right, or admitted a disqualified person to vote—if it casts no uncertainty on the result, and has not been occasioned by the agency of a party seeking to derive a benefit from it—it may well be overlooked, in a case of this kind, when the only question is, which vote was the greatest—that for the subscription or that against subscription?"

In that case the complaint was that the polls were kept open too long; in this, it is objected that they were closed for

an hour, when they should have been open.   In that case the court held it might be proved what votes were polled after 5 o'clock.   These votes would, of course, be rejected, but that would not vitiate the entire poll.

We will not now decide, as the question is not presented by this record, what should be the rule, in a case like the present, if it appeared that legal voters had sought to vote and had lost the opportunity of voting in consequence of the recess.

Counsel for appellees insist that, as the language of the statute is negative in its character, more weight is to be attached to it than if words of positive prohibition had not been used; but the difference between saying that there shall be no recess or adjournment until all the votes are counted, and saying that the polls shall be closed at a certain hour, is rather fanciful than real.   The question in either case is not whether the legislature has expressed its command in affirmative or prohibitory terms, but what is the nature of its command, and what the purpose, character and extent of its violation in the particular case, and then determine whether justice requires the entire poll to be suppressed, in consequence of a non-observance of the law, that may have been free from either wrongful intent or injurious effect.   Of course, if the legislature fixes the penalty, no question for construction is left; but where it has not done so, as in this instance, the rule we have announced is in harmony with the previous decisions of this and other courts.   The precise question was decided in *Fry* v. *Booth,* 19 Ohio St. 25; see also *People* v. *Cook,* 4 Selden, 67.

We are of opinion the court erred in rejecting the entire vote of Winfield precinct.

The appellees assign, as a cross-error, that the court ought to have excluded a great part of the non-registered vote of Milton township, because proof was not made, as required by the statute, of the residence of the voter, by the oath of a householder and registered voter.

364 DuPage County *et al. v.* The People *ex rel.* [Sept. T.,

Opinion of the Court.

Section 7 of the registry law reads as follows:

"No vote shall be received at any State, county, town or city election, in this State, except at town meetings in towns adopting the township organization law, if the name of the person offering to vote be not on the said register, made on Tuesday or Wednesday preceding the election, unless the person offering to vote shall furnish to the judges of the election his affidavit, in writing, stating therein that he is an inhabitant of said district, and entitled to vote therein at such election, and prove by the oath of a householder and registered voter, of the district in which he offers his vote, that he knows such person to be an inhabitant of the district, and, if in any city, giving the residence of such person within said district. The oath may be administered by one of the judges or inspectors of the election, at the polls where the vote shall be offered, or by any other person authorized to administer oaths, but no person shall be authorized to receive compensation for administering the oath. Said oath shall be preserved and filed in the office of the town or city clerk, or in case there be no clerk, then said oath shall be filed with, and preserved by, the judges or inspectors of the proper district. Any person may be challenged, and the same oaths shall be put as now are, or hereafter may be, prescribed by law." Gross' Stat. p. 257, sec. 85.

The greater portion of the non-registered voters at the Milton precinct, while they filed their own affidavits, as required by law, neglected to file the affidavit of a householder and registered voter, as required by the statute. The term, "oath," is used in reference to the proof to be made by the householder; but the statute evidently contemplates that it shall be a written oath or affidavit, because it provides that "said oath shall be preserved and filed in the office of the town or city clerk." A blank form of affidavit was used in Milton, or rather there were two blank forms upon the same piece of paper—one for the voter and one for the indorsing

witness.  To the affidavit of the voter was affixed a proper *jurat* by a magistrate, but to the affidavit of the witness was affixed only his own signature, without, in most cases, any *jurat* of an officer, showing the witness to have been sworn.

Here is an irregularity, the effect of which, unlike the other case we have been considering, is fixed by the legislature itself.  It is said "no vote shall be received" unless these affidavits are furnished.  There is no room left for construction.

This law was before this court, in the case of *Byler* v. *Asher*, 47 Ill. 101; and it was there held that the judges of the election acted properly in refusing to receive a ballot from a person desiring to vote, who was not registered, and had not filed the affidavit of a witness in connection with his own.  The question whether such votes, having been received by the judges of the election, could be properly counted by the courts in a case pending before them, and turning upon the result of the election, was considered very fully in *State* v. *Hilmantel*, 21 Wis. 566, and it was held the votes could not be counted.  In that case the distinction is drawn between the failure of the voter to qualify himself and a failure on the part of the officers to observe some requirement of the law as to the manner of conducting an election.

In the case before us, however, it appears, from the evidence, that at least a part of these voters not only made their own affidavits, but procured the requisite affidavit to be signed and sworn to by the proper witnesses; but the magistrates who took the affidavits, while affixing the proper *jurat* to the first affidavit, neglected to do so as to the second.  The voter had, in fact, made the proof required by the law, and the judges of the election accepted the evidence offered, although not properly authenticated.  It may be that they considered the *jurat* of the magistrate as applying to both the affidavit of the voter and his witness.  The record is so made up that we can not tell whether they were justified in doing this or not; but as the case must be reversed for the errors

assigned by the appellants, we will only say, in regard to the vote in Milton township, that if the *jurat* of the magistrate can not properly be applied to both affidavits, then the appellants should be permitted to prove that the voters·in question were, in fact, legal voters, and that the affidavits filed by them were, in fact, sworn to not only by them, but by the witnesses required by the statute. This will do no violence to the statute, because the object of the evidence will be to show that it was, in substance, obeyed, and it will certainly enable the court to decide this case upon its merits. To permit this proof, is like allowing an order of court to be made *nunc pro tunc*—an expedient sometimes resorted to by courts, in order to show the actual fact and prevent a defeat of justice.

The decree of the circuit court is reversed and the case remanded, with leave to both parties to take further evidence.

*Decree reversed.*