COMMONWEALTH *vs.* LORENZO SMITH.

Dukes County. Oct. 25, 1881. — March 4, 1882. MORTON, C. J., W. ALLEN & C. ALLEN, JJ., absent.

A notice to the inhabitants of a town of the meeting for the annual state election called upon them to meet on a certain day at a designated place, " to vote for government officers ; " was signed by a majority only of the selectmen, without the addition of the name of their office to their signatures; was not directed to or served by a constable or other person appointed by the selectmen for that purpose; but was posted more than seven days before the day of the election in a public place, according to the usual custom of the town, there being no by-law or vote of the town prescribing how warrants for meetings should be served. All but eight of the registered voters of the town were present at the meeting, and of those all voted for the office of county commissioner but one. Of the eight who were not present, five had actual notice of the time and place of the meeting and that a county commissioner was to be voted for, two had been absent at sea more than two weeks prior to the meeting, and one was confined to his bed by sickness. One of the candidates for county commissioner had a plurality of eight votes in all the towns of the county including the town in question. *Held,* upon an information in the nature of a *quo warranto,* that the election in the town in question was valid; and that the defendant was duly elected to the office of county commissioner.

INFORMATION in the nature of a *quo warranto,* filed April 1, 1880, by the Attorney General in behalf of the Commonwealth, and at the relation of Benjamin Clough, alleging that the defendant was usurping the office of county commissioner of the county of Dukes County.

At the hearing before *Morton,* J., it appeared that the defendant's title to his office depended upon the validity of the notice

of the annual meeting held in the town of Gay Head on November 4, 1879, for the election of state and county officers, he having received four hundred and twenty-nine votes, including twenty-four votes cast for him in Gay Head, and Clough, the relator, having received four hundred and twenty one votes. On the question of the validity of this notice the judge found the following facts, subject to objections as to their competency:

More than seven days before the day of the annual election, a notice, of which the following is a copy, was posted by Charles H. Mingo, chairman of the selectmen, on the door of the meeting-house in Gay Head: · ·

### "NOTICE.

To notify the inhabitants qualified to vote in Town affairs to meet at the school-house on the forth day of November next at ten o'clock A. M. to vote for Government officers. Polls will be open from ten o'clock A. M. until two P. M. ·

" Gay Head, Oct. 25th, 1879. 　　Charles H. Mingo.
　　　　　　　　　　　　　　　　Thomas Jeffers."

Another notice, like the above in every particular excepting that it did not have the name of·Thomas Jeffers subscribed, was posted on the school-house more than seven days before election day. There was no other warrant or notice of the meeting, and no person was appointed by the selectmen to notify the meeting. There were no by-laws of the town prescribing how warrants for meetings should be served; but it had been the usual custom of the town to call meetings by posting the warrant or notice in some public place seven days before the day of the meeting. Charles H. Mingo and Thomas Jeffers, who signed said notice, were two of the three selectmen of the town.

On November 4, 1879, the meeting was held at the school-house, and the notice posted on the outside was taken down and read by the town clerk at the opening of the meeting at ten o'clock A. M. The polls were opened at ten A. M. and kept open until two P. M., and votes were cast and received for governor and all other officers voted for at annual elections, including county commissioner. All the proceedings of the

meeting were regular and in due form, except as above stated. The whole number of registered voters in said town at that time was thirty-three. Of this number there were present at the meeting twenty-five, of whom twenty-four voted for the defendant and one did not vote for any person. Of the other eight who were not present at the meeting, two were absent at sea and had been so absent at sea for more than two weeks prior to the meeting, one was confined to his bed at his house by sickness so that he was unable to attend the meeting, one was absent at work in another town some twenty miles distant, and had been so absent for more than two weeks prior to the meeting, and both the one last named and the remaining four had been verbally notified in fact of the time and place of the meeting, and that a county commissioner was to be voted for, but did not choose to go, and did not remain away from said meeting on account of any want of actual notice of the same.

Upon the foregoing facts, so far as they were competent, the judge was of opinion that the meeting in Gay Head was void for want of legal notice, and that the twenty-four votes cast there for the defendant should not be counted for him, and that he should be ousted from his office; but reserved the questions arising upon the foregoing facts for the determination of the full court.

*J. Brown*, for the Commonwealth.

*H. M. Knowlton*, for the defendant.

FIELD, J. The question here presented for decision is whether the votes cast for county commissioner at the election in Gay Head should be counted or rejected in determining who was elected county commissioner of the county of Dukes County at the annual election held November 4, 1879.

The alleged illegality in the election is the want of legal notice of the meeting for election. No objection is made that the meeting was not held at the proper place, or opened at the proper hour, or kept open the requisite length of time, or that all the proceedings at the meeting were not according to law.

The Gen. Sts. *c.* 18, § 21, provide that " every town meeting shall be held in pursuance of a warrant under the hands of the selectmen, directed to the constables or some other persons appointed by the selectmen for that purpose, who shall forthwith

notify such meeting in the manner prescribed by the by-laws or a vote of the town."

Meetings for the election of national, state, district and county officers are not, strictly speaking, town meetings, but the St. of 1874, c. 376, § 21, provides that "such meetings in towns shall be called by the selectmen in the manner ordered by the towns, and the warrant for notifying such meetings shall specify the time when the polls for the choice of the several officers shall be opened, and the hour at which the polls may be closed." The provisions in the General Statutes for calling town meetings are substantially the same as in the Rev. Sts. c. 15, §§ 19–22, which were taken from the St. of 1785, c. 75, § 5. The provisions of the St. of 1874, c. 376, §§ 19–21, 24, for calling meetings for the election of national, state, district and county officers, are similar to those contained in the Gen. Sts. c. 7, §§ 2, 3, and the Gen. Sts. c. 8, § 7, and these were taken in substance from the Sts. of 1857, c. 311, 1841, c. 70, 1839, c. 42, and the Revised Statutes.

The Rev. Sts. c. 5, § 5, provide that "all town meetings, for the election of representatives in the General Court, shall be notified by the selectmen of each town, in the manner legally established in such town, for calling other town meetings," and the Rev. Sts. c. 6, § 3, require the selectmen of the several towns " in the manner directed by law for holding elections therein " to cause the inhabitants to assemble and give in their votes for representatives in Congress; and § 14 of the same chapter requires the selectmen of the several towns " in the manner prescribed by law for notifying town meetings " to cause the inhabitants to assemble and give in their votes for electors of President and Vice-President.

The St. of 1795, c. 55, § 1, in regulating the election of representatives in the Legislature of the Commonwealth, provides that " it shall be the duty of such selectmen to summon and notify such meeting in the manner there legally established for calling other town meetings," and § 2 of the same act imposes a penalty upon selectmen " who shall neglect to call meetings of the inhabitants and others privileged there to vote for the election of governor, lieutenant-governor, councillors and senators, and to give due warning of the time and place of such

meetings, as required by the Constitution of this Common-
wealth," &c. The Constitution of the Commonwealth as origi-
nally adopted, *c.* 1, § 2, art. 2, required that the meeting for the
election of senators and councillors should "be called by the
selectmen, and warned in due course of law, at least seven days
before the first Monday in April," &c.

The statutes we have cited, as well as other provisions, par-
ticularly those relating to elections to fill vacancies, all require
or imply that a meeting for election must be called by a war-
rant issued by the selectmen, and tend to show that the provis-
ion in the St. of 1874, *c.* 376, § 21, that "such meetings shall
be called by the selectmen in the manner ordered by the towns,"
means that such meetings shall be called in the same manner as
town meetings, namely, by "a warrant under the hands of the
selectmen, directed to the constables or some other persons ap-
pointed by the selectmen for that purpose, who shall forthwith
notify such meeting in the manner prescribed by the by-laws or
a vote of the town."

It is not necessary to decide this; but, if it be assumed, it does
not therefore necessarily follow that the notice in this case was
fatally defective, or that the election held was void. The report
finds that there were no "by-laws of the town prescribing how
warrants for meeting shall be served," and it does not appear
that there was any vote of the town on the subject; but the
notice given was posted more than seven days before the day of
election in a public place, which was according to the usual cus-
tom of the town. This would be a reasonable notice for a town
meeting, in the absence of any by-law or vote of the town.
*Rand* v. *Wilder*, 11 Cush. 294.

The notice was signed by only a majority of the selectmen,
which is not a fatal objection. *Reynolds* v. *New Salem*, 6 Met.
340. The want of the addition of the name of their office to
their signatures cannot be held necessarily to render the notice
void.

The notice called upon the inhabitants "to vote for govern-
ment officers." There is no express provision of the statute
that the warrant shall specify all the officers to be voted for.
It has been held that an article in a warrant for a town meet-
ing calling upon the inhabitants "to choose all necessary town

officers " is sufficient for the election of such officers as may lawfully be chosen by towns. *Williams* v. *Lunenburg School District*, 21 Pick. 75. *Sherman* v. *Torrey*, 99 Mass. 472.

The notice did not specify the number of representatives to be voted for, nor specifically call upon the voters to bring in their votes on one ballot for such representatives, (see St. 1874, *c.* 376, § 24,) but this does not concern the election of a county commissioner. The provision in the St. of 1874, *c.* 376, § 19, that " the mayor and aldermen and selectmen shall decide whether such officers shall be voted for on one ballot or at the same time on separate ballots, and shall give notice thereof in the warrant calling the meeting," we regard as directory.

The notice was not directed to " constables or some other persons appointed by the selectmen for that purpose ; " it was not served by a constable or a person appointed by the selectmen to serve it, and there was no return of service. It is unnecessary to consider whether it might not be presumed that the inhabitants of Gay Head qualified to vote had the same actual notice of this election as they would have had if a constable had posted the notice in the manner it was posted by the selectmen, for the facts found leave no room for presumptions. It is found as a fact that but eight of the registered voters were absent from the meeting, and of those present all voted for county commissioner but one ; and of the eight who were not present, five had actual notice of the time and place of the meeting and that a county commissioner was to be voted for, and did not remain away from the meeting on account of any want of notice ; and of the remaining three, two were absent at sea and had been absent more than two weeks prior to the meeting, and one was confined to his bed by sickness and was unable to attend the meeting. The defendant had a plurality of eight votes in all the towns in the county.

If these facts are competent, it becomes apparent that the defects in the notice or warrant and in the mode of serving it worked no injury, and that the election was as fully attended as if all the provisions of the law in calling the meeting had been strictly followed. These facts are competent, unless the provisions of the statute which have been disregarded are strictly mandatory, and we are of opinion that they are not.

It is not necessary to determine whether this notice, served as it was, would be a good warrant for a town meeting. There are many reasons why defects in the call of a meeting for the election of national, state, district and county officers should not always be followed by the same consequences as similar defects in the call for a town meeting. Town meetings are in a sense legislative assemblies, held at a time and for the transaction of business not definitely prescribed by law. The annual town meeting must indeed be held in February, March or April, but the day must be determined by the warrant, and other town meetings must be held at such time as the selectmen may order; they must be held in pursuance of a warrant; the warrant must express the time and place of the meeting and the subjects to be acted upon; the selectmen must insert in the warrant all subjects which ten or more voters shall in writing request to be inserted; and if the selectmen unreasonably refuse to call a town meeting, any justice of the peace of the county, upon the application of ten or more legal voters of the town, may call such a meeting by a warrant under his hand. Gen. Sts. *c.* 18, §§ 20–23.

The warrant for a town meeting is, as its name imports, the warrant or authority under which the meeting is held. But the annual meeting for the election of national, state, district and county officers, is required by law to be held on a day fixed by statute, and the officers to be elected and the manner of holding the election are designated and defined by statute. The warrant for such meetings is expressly required to specify the time when the polls shall be opened and the hour at which they may be closed, and to contain the directions that the voters bring in their votes on one ballot or on separate ballots, which have been before recited; but there are no other express requirements of the statute in regard to what the warrant shall contain. The language of the statute is, that such meetings shall be called in the manner ordered by the towns, and not that every such meeting shall be held in pursuance of a warrant, as in the case of town meetings. The actual warrant for holding an annual election for county commissioner at Gay Head, at the time this election was held, was the Gen. Sts. *c.* 10, §§ 1, 6.

The main purpose of a warrant for meetings for such elections is to remind legal voters of their right and duty to vote, and of

the officers to be elected, and at the same time to give them notice of the place where the election will be held, and of the hour when the polls will be opened and when they will be closed. If this election at Gay Head be declared void, there can be no new election for county commissioner at Gay Head, and the voters there will have been deprived of their votes without fault on their part, in consequence of the negligence of the selectmen of the town.

If this negligence is such that there may not have been a full, free and fair vote, or such that the result of the election there cannot be accurately ascertained, this effect may be unavoidable; but such conclusion ought not to be reached unless the construction of the statutes clearly requires it, or the manner in which the election was called has possibly resulted in depriving some legal voter of his vote, or has influenced or rendered uncertain the result of the election ; for this is an election held at the time, in the place, and for the purposes prescribed by law, and by the officers authorized by law to hold such an election. The provisions of the statutes which have been disregarded in this case, we think, are not of the essence of the thing required to be done, by complying with which jurisdiction or authority to hold an election was obtained, but they regulate the form and manner in which the meeting for an election required by law then and there to be held should be called.

It is conceded by the defendant, that the returns and certificates of election, even when made in entire conformity to law, are but *prima facie* evidence of title to an elective office, when that title is tried on an information in the nature of a *quo warranto*, and that the inquiry goes back of them for the purpose of ascertaining whether in fact the defendant has been legally elected to the office which he assumes to hold.

There may indeed be facts which a court will not investigate or consider, on the ground that public policy or the laws forbid it; but the facts proved in this case are not of that character.

The case which perhaps most nearly resembles this is *People v. Peck*, 11 Wend. 604 ; but the following cases, decided under a variety of circumstances, establish the general principles which govern the case at bar. *People v. Hartwell*, 12 Mich. 508. *Foster v. Scarff*, 15 Ohio St. 532. *State v. Goetze*, 22 Wis.

363. *State* v. *Jones*, 19 Ind. 356. *DuPage County* v. *People*, 65 Ill. 360. *Cleland* v. *Porter*, 74 Ill. 76. *People* v. *Cook*, 4 Selden, 67. *People* v. *Wilson*, 62 N. Y. 186

The result is that the election at Gay Head is not void, and that this defendant was duly elected to the office he holds.

We have no occasion to consider whether it would have changed the result we have reached, if the conduct of the selectmen in not complying with the statutory requirements for calling the meeting had been fraudulent, although the fraud had produced no effect upon the election.

*Information dismissed.*