Wheat v. Smith.

## WHEAT v. SMITH.

1. USURPATION OF OFFICE: *Statute providing remedy against: Action for local office: Jurisdiction.*

The provisions of the civil code (*Mansf. Dig., Chap.* 151.) affording a remedy for the usurpation of an office and enabling the person entitled to the office to recover it in an action at law against the usurper, are still in force, so far as they are not inconsistent with the jurisdiction over election contests for local offices, vested by the act of 1875 in the county courts. And under *sec.* 6466 *Mansf. Dig.* an action in the circuit court for the possession of the office of circuit clerk, may be maintained by one who has been duly elected thereto, as shown by the official returns, and who, although he has not been commissioned, is entitled to a commission, and can establish his title to the office without converting such action into a proceeding to contest the election of another person.

Wheat v. Smith.

2. SAME: *Holding over against person elected.*

On the 8th of January, 1887, at a special election in Lafayette county to fill a vacancy in the office of circuit clerk, the plaintiff was duly elected to that office, as shown by the official returns; but the returns having been lost or destroyed before they were canvassed, the election was not certified to the secretary of state and no commission was issued· The defendant was chosen to the same office for the term of two years at the general election in 1884, and was holding over without any claim that he had been re-elected, when the plaintiff, in July, 1887, brought an action against him to recover the office, under *section 6466 Mansf. Dig.*, which provides a remedy against usurpation in office. *Held:* That as against the plaintiff the defendant was a usurper within the meaning of the statute.

JURY TRIAL: *Right to in action for possession of office.*

The right of trial by jury does not extend to an action brought under *sec. 6466 Mansf. Dig.*, for the possession of an office.

4. ELECTIONS: *Notice of by publication.*

By *secs. 2659, 2660, Mansf. Dig.*, it was made the duty of the sheriff to give notice of each election by posting a copy of his proclamation therefor at each voting place, and at two or more of the most public places in each township, and also to publish the same in a newspaper, if one be published in the county. A special election having been ordered to fill a vacancy in a county office, the sheriff posted a notice thereof, as required by the statute, but failed to make publication of the notice in the only newspaper published in the county, which was a paper uncertain and irregular in its issues. It was generally known that the election was to take place, it was held at all the voting precincts on the day fixed by the governor, and the vote cast was not less than that usually polled at such elections. *Held:* That the failure of the sheriff to make publication in such newspaper did not invalidate the election.

5. DOMICILE: *Not changed by residence abroad as consul.*

The plaintiff was a citizen and resident of Arkansas in 1875. In that year he was appointed United States consul to a foreign country, where he remained in the discharge of his official duties until his removal from office, in 1886, when he returned direct to this state and resumed his residence here. *Held:* That the plaintiff's residence abroad, being referable, so far as the testimony shows, solely to his official station, did not change the domicile he had previously acquired in Arkansas, which is presumed to have continued in the absence of proof to the contrary.

6. EVIDENCE: *Secondary, as to result of elections.*

After proof that the original returns of an election and also the duplicates of the same have been lost, the judges of the election may state from recollection the result as shown by the record.

APPEAL from *Lafayette* Circuit Court.

C. E. MITCHELL, Judge.

*Byrne & Gordon* and *T. E. Webber*, for appellant.

1. The circuit court has no jurisdiction to try the case. The complaint was under *Ch. 51 Mansf. Dig.*, *sec.* 6466, *Ch.* 12, *Civil Code*, which superseded *sec.* 90, *Ch.* 62 *Gould's*

*Dig.*; 28 *Ark.*, 451. The constitution of 1874¹ gives exclusive original jurisdiction to the *county courts* in matters of local concern. *Art.* 7, *sec* 28. The circuit court has jurisdiction in contest cases *by appeal* only. *Ib.*, *art.* 7, *sec.* 52. The original jurisdiction is in the county court. *Acts* 1874–5, *p.* 106, *sec.* 71; 28 *Ark.*, 451.

2. This was *a contest* substantially for the office, (28 *Ark.*, 451), and the pre-requisites for contest were not complied with. There was no notice; the action was not brought within six months. *Mansf. Dig.*, *secs.* 2719–2722.

3. Defendant was entitled to a jury trial, but the court tried the case *summarily*, as in cases of contest. *Mansf. Dig.*, *sec.* 2728; *art.* 2, *sec.* 7, *Const.* 1874.

4. Testimony, as to the vote, of witnesses " to the best of their recollection," and as to what they *thought* about the vote, clearly inadmissible. It was a mere matter of opinion on the part of witnesses, without showing that the best evidence was not obtainable.

5. No proclamation was had as provided by *sec.* 2660 *Mansf. Dig.*, though there was a newspaper published in the county, and the election was not legal. *McCrary Elections,* (2d Ed.), *sec.* 120; 11 *Cal.*, 49; *McCrary Elec., sec.* 118; *Cooly Const., Lim.*, (5th Ed.), *p.* 759 *and note* 2. This was a *special* election, and notice was not brought home to the great body of the electors. *McCrary Elec., secs.* 135–6.

6. Appellee was not a resident citizen of Lafayette county, Ark., or qualified to hold the office, not having resided in the state twelve months, county six months and precinct one month next preceeding the election.

7. Appellant was not a *usurper* within the meaning of the statute. *Webst. Dict.* He neither *seized* nor *held* possession by force or without right. 28 *Ark.*, 451.

*Scott & Jones*, for appellee,

1. This was not a contest, but a suit for a recovery of the office. Wheat does not claim to have been elected at the election in question. Smith was entitled to the office from the fact that he received the greatest number of votes at the special election, and sues for it under *ch.* 151 *Mansf. Dig.* in the circuit court. 17 *Ark.*, 407; 2 *S. W. Rep.*, 349. *Ch.* 151 *Mansf. Dig.* is *ch.* 12 *Civil Code*, and, as decided in 28 *Ark.*, 451, a contest could be in effect tried before the circuit court, and that one holding a commission might be a usurper.

The statutory remedy of a contest does not oust the jurisdiction on information in the nature of quo warranto. 28 *Cal.*, 123; *Brightly's Lead. Cases*, 480.

2. Appellant was not entitled to a jury. There was no claim for fees or money. 26 *Ark.*, 281; *Gautt's Dig.*, sec. 4642; 40 *Ark.*, 290; 64 *Mo.*, 415.

3. the testimony of Morgan Butler and others, as to the result of the vote, was properly admitted. The original and duplicate poll books were missing, and the judges could only testify from recollection.

4. Failure to publish the notice in the newspaper did not invalidate the election. 13 *N. Y.*, 350; 12 *Mich.*, 508; 20 *Wisc.*, 234; 22 *Id.*, 363; 10 *Iowa*, 218; 19 *Ind.*, 356; 43 *Ark.*, 62.

5. Appellee was qualified to hold the office.

COCKRILL, C. J. B. B. Wheat was elected circuit clerk of Lafayette county at the general election in 1884 for a term of two years, and at the time of the institution of this action against him, in July, 1887, he was holding over without claiming under a subsequent election. On the date mentioned the appellee, V. V. Smith, instituted proceedings in the Lafayette circuit court under the "Usurpation of

Wheat v. Smith.

Office Act," to oust Wheat and recover the office held by him. The complaint alleged in effect, that at a special election to fill a vacancy in the office of circuit clerk of Lafayette county, duly and legally held on the 8th of January, 1887, the plaintiff received a majority of the votes cast; that regular and complete returns of the election were made and delivered by the proper election officers to the county clerk, and that said returns showed that plaintiff received a majority of all the votes cast for said office; that all the election returns—including the poll books and ballots—were abstracted from the office of the county clerk and carried away, and that a canvass of them was thereby prevented; that no certificate of the result of said election had been delivered to the secretary of state, and that no commission had ever been issued to any one; that at the time of the election and filing of the complaint the plaintiff possessed the qualifications required for holding said office; that the defendant, Wheat, was merely holding over until his successor should qualify; and prayed that he be inducted into the office,

Wheat filed a demurrer to the complaint, setting forth that the circuit court was without jurisdiction to try the cause, and that no cause of action was stated. The court overruled the demurrer, and Wheat, who has appealed, assigns this as error.

1. The contention of the appellant upon this feature of the case is, that the exclusive jurisdiction over all contests for local offices is vested in the county courts, and that the circuit court was, therefore, without power to investigate the matters set forth in the complaint. This necessitates an inquiry into the object and meaning of the act under which the action was instituted.

It was enacted in 1868 as *chapter* 12 *of the Code of Civil Procedure* (*Mansf. Dig., chapter* 151). The first section is as follows: " In lieu of the writs of *scire facias* and *quo*

*warranto*, or of an information in the nature of a *quo warranto*, actions by proceedings at law may be brought to vacate or repeal charters, and prevent the usurpation of an office or franchise." The next section relates to the vacation of charters. *Section* 6466, under which this action is brought, provides that: "Whenever a person usurps an office or franchise to which he is not entitled by law, an action by proceedings at law may be instituted against him, either by the state or the party entitled to the office or franchise, to prevent the usurper from exercising the office or franchise." A subsequent section authorizes the court trying the action to adjudge the office to the plaintiff, and to induct him into it. *Sec.* 6470.

1. USURPATION OF OFFICE: Statute providing remedy against: Action for local office: Jurisdition.

The design of these provisions was to enlarge the remedy formerly afforded by information in the nature of *quo warranto*. *Wood on Mandamus, p* 224 *et seq.*; *State ex rel v. Messmore*, 14 *Wisc.*, 115; *Patterson v. Miller*, 2 *Metc.*, (*Ky.*) 497; *People ex rel. v. Thatcher*, 55 *N. Y.*, 529. That intention is expressed in the first section and is manifested by the nature of the remedy provided in the others. It opens the way for the person who would have been the relator in an action by the state under the common law practice, to institute the proceeding to test his title to an office in his own name, without leave of court, or the intervention of the state or one of her officials, as a party. The remedy thus afforded, as was decided in *Lambert v. Gallagher*, 28 *Ark.*, 451, was broad enough to include the ordinary election contest for office; and it was held in that case that the provisions conferred upon the circuit court jurisdiction to hear and determine a contested election controversy. But since that decision exclusive original jurisdiction in the matter of election contests has been conferred upon the county courts. *Mansf. Dig.*, sec. 2722. See *Willeford v. State*, 43 *Ark.*, 67. It is argued that this jurisdiction is in-

consistent with the power asserted by the circuit court in this case. The contention is too broad. The act under consideration is not repealed. Actions have been maintained under it and judgments rendered therein for the recovery of offices, sustained by this court since the change in the law mentioned above. *Falconer v. Shores*, 37 *Ark.*, 386; *Elsey v. Falconer*, 42 *Id.*, 117; *Alston v. Falconer*, *Ib.* 114. It is operative in so far as it is not inconsistent with the jurisdiction conferred on the county courts. The plaintiff's action is not a proceeding to contest an election within the meaning of the statute governing contested elections. *Williamson v. Lane*, 52 *Tex.*, 335; *State ex rel. v. Swann*, 12 *Lea*, 30. It is not a contest about the fairness of the election at all. It is a suit for the possession of an office to which, as the complaint alleges, the election returns show the plaintiff has been elected. If there was a valid election, as the complaint alleged, and the returns made to the county clerk showed that Smith was elected to fill the vacancy, any competitor for the office could have entered his contest in the county court as pointed out by statute, to prove that the returns did not express the will of the electors. The loss or destruction of the returns did not prevent a contest. The statute requires the institution of the proceeding to contest within a limited time, regardless of the action or non-action of the canvassing board. *Mansf. Dig , sec.* 2723; *Bowen v. Hixon*, 45 *Mo.*, 340.

But there was nothing for Smith to contest. The returns showed a state of facts satisfactory to him, and he had the legal right to stand upon the prima facie case thus made for him. *People v. Minck*, 21 *N. Y.*, 539; *ex parte Smith*, 8 *S. C.* 495.

But it is said that the plaintiff had not qualified, that **2. Same:** *Holding over against person elected.* Wheat was, therefore, not a usurper, and that the action would not lie. It is necessary to recur to the object of the act to determine by and against whom an action under it may be maintained. The remedy being a substitute for and a modiffcation of the proceeding by information in the nature of *quo warranto*, we may look to that proceeding to determine its character. The term usurper is not there used merely to denominate one who intrudes himself into an office without color of title. A defective title in that proceeding is no greater protection than no title at all, and one exercising a public office without an absolute right to hold it is there regarded as a usurper, as against him who has the better right. *People v. Ridgley*, 21 *Ill.*, 67; *Hamlin v. Hassafer, M. S. Supreme Court Oregon*, 1887. There is no reason to presume that the legislature intended to give the term a different meaning in enlarging the remedy, and it was expressly decided in *Lambert v. Gallagher, supra*, that it did not. Aside from the analogy found in the proceedings in the nature of *quo warranto*, the statute indicates that the action may be sustained against any one who is exercising the functions of an office which he cannot hold by reason of a superior right. If in the phrase "whenever one usurps an office" the word "usurp" is used in its narrower sense of "seize without color of right," the subsequent part of the sentence—"to which he is not entitled by law"—is mere tautology and useless. An act should be so construed as to give meaning to every part of it. To say that "whenever a person seizes without right an office to which he is not entitled by law," would not be in consonance with that rule of construction; but rather to say the meaning is, "whenever a person holds or assumes the functions of an office to which he is not entitled by law" he may be ousted "by the party entitled to the office."

Nor was it necessary that the relator in the *quo warranto* information, when the proceeding was prosecuted by the state for his benefit, should be invested with a complete title to the office, as by holding the commission. It was sufficient if he was entitled to the commission. *State ex rel. Smith v. Askew*, 48 *Ark.*, 82. No more is required in the statutory action if the plaintiff can establish his title without converting the proceeding into an election contest. The statute declares that the action may be maintained by the person entitled to the office.

The legislature, instead of devising a summary remedy for the possession of an office, withheld from him who of right ought to have it, were engaged in a fruitless labor, if the remedy was to be limited to one having a complete title as distinguished from a perfect right to the title. For where the title was complete the common law afforded an expeditious remedy by mandamus to restore a lost office, and, it is said also, to put one into an office which he had not before occupied. *State v. Dunn*, 12 *Am.*, *Dec.* 27 *and note.*

But the statutory remedy is expresssed to be not in lieu simply of the narrow remedy afforded by mandamus, but of the more liberal information in the nature of *quo warranto*.

Now the complaint in this case alleges, and the demurrer admits, that proper returns showing Smith's election were made by the election officers to the county clerk. The only duty of the board of canvassers thereafter was to ascertain and declare the result of the election from the face of the returns. Their functions are ministerial merely, (*Patton v. Coates*, 41 *Ark.*, 111), and no failure or neglect to perform them can defeat the title of the candidate whom it is apparent they must have declared elected if they had been permitted to act at all. The function of the election officers not having been performed in the completion of the election, Smith could not qualify and enter upon the discharge of the

Wheat v. Smith.

duties of the office until a competent court had adjudged the result. *People v. Woods*, 91 *N. Y.*, 616.

He sues now to accomplish that result. The statute under which he sues was designed to afford him the opportunity. His complaint states a case for the court's intervention in his behalf and the demurrer was properly overruled.

2. The defendant answered, denying that there was a valid election held to fill the vacancy in the clerk's office; denying that the plaintiff was a qualified elector; denying that the election returns showed the plaintiff's election; denying that he, the defendant, was wrongfully in possession of the office; and set forth that he was holding over under his commission issued in pursuance of the election in 1884. There was a trial upon the issues thus joined, and a judgment for plaintiff. It is urged that the judgment is erroneous for several reasons:

1. It is said the court refused to impanel a jury to try the cause as requested by the defendant. There is no showing in the bill of exceptions that a jury was demanded and refused, and no motion for a new trial for that cause. In *Chapline v. Robinson*, 44 *Ark.*, 205, we said: "In the absence of an affirmative showing in the bill of exceptions that a jury was demanded and refused, a judgment will not be reversed for such a cause." But the constitutional right to trial by jury is confined to cases which by the common law were so triable, (*Govan v. Jackson*, 32 *Ark.*, 553; *Holliday Bros. v. Cohn* 34 *Id.* 707; *Williams v. Citizens*, 40 *Id.* 290;) and it was decided in *Johnson v. State*, 26 *Ark.*, 281, that the right did not extend at common law to a civil proceeding in the nature of *quo warranto* against a public officer. The statute does not enlarge the right nor attempt to extend it to cases of this or a like nature, as was held in *Williams v. Citizens, supra*; *Mansf. Dig., secs.* 5105-6. No claim for fees or emoluments was made by the plaintiff.

3. JURY TRIAL: Right to, in action for possession of an office.

4. ELEC-
TIONS:
Notice of
by publica-
tion.

2. It is urged that the election is invalid upon the ground that the requirements of the statute as to notice to be given before it was held were not strictly complied with.

It is made the duty of the governor to issue his procla-mation or writ of election when a special election is re-quired to fill a vacancy in any county office, (*Mansf. Dig.*, *sec.* 2760), fixing a day for the election; and it is the duty of the sheriff of the county in which the election is to be held, to give public notice of the time and place of holding the election, by setting up a copy of the proclamation at each of the voting precincts and two or more of the most public places in each township, and by publishing it in a. newspaper, if one is published in the county. *Ib., sec.* 2659–60.

It was proved in this case by the sheriff that he received the governor's proclamation, ordering the special election and fixing the 8th day of January, 1887, as the time for holding it; that he prepared his notices for posting in proper form and delivered them to his deputies for use, but that he did not know of his own knowledge whether the deputies posted the notices as directed by him. He indicated no cause for belief that they had failed in their duty, and it was shown by his and by other evidence that copies of the notice were seen in some of the townships.

It was the duty of the sheriff to cause the election to be held. It became the duty of his deputies to post the notices furnished them by their principal as directed by him. The election was held. It must be pre-sumed that the notices were posted. The law presumes that everything required to be done by an officer to make valid an act which he has performed was done. It is never presumed that an officer has discharged a duty ir-regularly. *Lawson on Presumptive evidence, rule 14, p. 53;*

*Stewart v. Houston*, 25 *Ark.*, 311; *St. L., I. M. & S. Ry. Co. v. Barnes,* 36 *Id.,* 99. The truth of the presumption is strengthened in this case by proof that some of the notices were, in fact, posted, and by the fact of the failure of the effort to prove that the duty of posting was neglected.

But it was proved that a newspaper was published in the county during the winter of 1886-7 and that the proclamation of the election was not published in it; and the argument is that the omission to make this publication is fatal to the validity of the election.

It must be conceded that the time and place are of the substance of every election. But it does not follow that formal notice of the time and place of holding the election is always essential to its validity. When the time and place are fixed by statute, as in case of a general election to fill vacancies caused by the expiration of the regular terms of office of the incumbents, all must take notice of the time and place of the election, whether there is a publication or not. *Hodgkins v. Fry*, 33 *Ark.*, 716; *Pulaski County Board of Equalization Cases*, 49 *Ark.*, 518. The right to hold the election in such cases comes from the statute, and the notice required to be given thereof is only a reminder to the people of what the law has otherwise provided. An omission to publish the statutory notice of the election does not, in such cases, affect its validity. *McCrary on Elections, sec,* 150 *Hodgkins v. Fry,sup.* When a special election to fill a va-; cancy is ordered there is no presumption that the voters know the date fixed by the writ of election, and they must be informed of it. But the established rule is that the particular form and manner pointed out by the statute for giving notice is not essential. Actual notice to the great body of electors is sufficient. The question in such cases is, whether the want of the statutory notice has resulted in depriving sufficient of the electors of the opportunity to exer-

cise their franchise, to change the result of the election. *McCrary on Elections, secs.* 141–48; *Commonwealth v. Smith,* 132 *Mass.,* 289; *State v. Davis,* 20 *Wisc.,* 235; *State v. Mc-Kinney,* 25 *Id.,* 416; *Desha v. Smith,* 10 *Iowa,* 212; *State v. Shirkving,* 19 *Neb.,* 497.

The courts hold that "the voice of the people is not to be rejected for a defect or want of notice, if they have in truth been called upon and have spoken." *Desha v. Smith; supra.* If the law were otherwise it would, as was said by the court in *Foster v. Scarff,* 15 *Ohio St.,* 532, "always be in the power of a ministerial officer by his malfeasance to prevent a legal election."

When the election is legally ordered, and the electors are actually apprised of the time and place appointed for holding it, the misfeasance or nonfeasance of the officer upon whom the statute devolves the duty of giving the election notice, cannot deprive the electors of the right to express their will through their ballots.

It is conceded, in this case, that the usual voting precincts were the proper places for holding the election, and the question is, were the voters apprised of the time?

Facts were in proof from which it must be inferred that the statutory notice by posters stuck up at each of the voting and two other public places in each township, was given by the sheriff in apt time; it was proved that there were three candidates for the office to be filled; that they all published cards in the only newspaper in the county for several weeks before the election, advertising their candidacy, and the day upon which the election would be held, and that the paper made editorial mention of each candidate as his card appeared; poll books were sent to all the voting precincts and a regular election was held in each—the friends of each candidate participating in the election at every polling place—and about two-thirds of the vote commonly

Wheat v. Smith.

polled at a general election for state and county officers was cast. There was the testimony of two witnesses that it was generally known that the election would be held. It was also in proof that the newspaper before mentioned, which was the only one published in the county, began publication in November next preceding the election, and, proving a financial failure, suspended the following March, and moved off in search of a more profitable field. From inability to procure paper for the publication, the weekly issues of this journal were sometimes cut down to small dimensions, and the publisher was unable to state with certainty that it had not failed, on occasions, to appear altogether.

Upon this evidence the circuit judge, who tried the case, refused to find the fact to be, that the time for holding the election was not generally known in advance of the event; and refused to declare that the failure to make publication in the newspaper invalidated the election. We sustain the conclusion, both as to law and fact.

Formal notice of the election was given in one of the modes pointed out by the statute. In the absence of the publication of a newspaper in the county, no other notice is required. *Mansf. Dig., secs.* 2659–60. The sheriff's notice by posting is, then, in some instances, all-sufficient to legalize an election held in pursuance of the governor's proclamation. To hold this election invalid for want of the additional notice by publication in a newspaper, which, it seems, as if by accident, had settled like a bird of passage within the confines of the county a short time before the election, without the vigor to make regular weekly issues during its ephemeral stay, would be to require a more rigid adherence to the letter of the statute than any case to which we have been cited has done. If any there was who depended upon the newspaper for notice of the

election, he must have obtained actual knowledge of the fact that it would be held—if issues were indeed made at the particular dates when the statutory notice might have been given—-by reason of the unofficial publications about the election which the paper contained. Those who did not put their reliance in this uncertain source were legally notified by the sheriff's official posters. It does not appear that any one was misled or deprived of his privilege of voting his choice through ignorance of the date of the election. The number of votes cast is as great in proportion to the aggregate vote as that ordinarily polled at special elections. No evidence suggesting even that a different result might have been reached was offered. Elections are not to be lightly set aside, though the law has not been strictly complied with. *Holland v. Davies*, 36 *Ark.*, 450. It is of the utmost importance that the public should have confidence in the administration of the election laws, and to know that the will of the majority, when fairly expressed, will be respected.

In *Hodgkins v. Fry*, 33 *Ark., sup.*, we held that where school directors, who were required by the statute to designate a place of meeting for voting a tax for school purposes, neglected to designate the place and give notice thereof, no legal school meeting could be held. The judgment in that case was approved in *Davies v. Holland*, 43 *Ark.*, 425. But those cases and this appeal are not analogous. In the Hodgkins case the time for holding the meeting was fixed by statute, but the place was not designated by any authority. In the case in hand, both time and place were fixed in the manner pointed out by statute. If there had been a failure on the part of the governor, in this case, to designate the time, as there was on the part of the directors in the other, to designate the place, the assemblage of the electors would have been without authority. Another material consideration is that in that case only fourteen

out of four hundred electors participated in the school meeting. Such a disparity in attendance is commonly taken as conclusive proof that knowledge of the intended election was not general, when the statutory notice has been omitted.

III. It is further urged that the plaintiff was not a quali- 5. D o m i - fied elector, and, consequently, not eligible to the office of <sub>CILE:</sub> Not circuit clerk. The contention is that a residence in the <sup>r e s i d ence</sup> state twelve months previous to the election was not <sup>abroad as</sup> shown.

It was proved that the plaintiff was a citizen of Arkansas and resident of Lafayette county in 1874; that in that year he held a state office which required his residence at the capitol; that he spent the winter of 1874–5 in Washington City, leaving his family in Arkansas, and still owning his homestead in Lafayette county; that in the spring of 1875 he was appointed and accepted the office of United States consul to the Island of St. Thomas, in the Danish West Indies, where he remained in the discharge of the official duties of that office until his removal by the president of the United States, in 1886, when he returned direct to Lafayette county and resumed his residence there. He sold his homestead about the time he accepted the foreign appointment. He testified, however, that he claimed a residence in Lafayette county all the while.

It is well settled that when an ambassador or consul is sent by one government to represent his state in a foreign country, his continuous residence in a foreign land, if referrable to his official duties, does not work a change of his domicile. There is no inference of domicile or of animus manendi to be drawn from such residence. *Wharton Conflict Laws, sec.* 49; *Jacobs' Law of Domicile, secs.* 321-3. The domicile of origin, as the home domicile is termed, is presumed to prevail until another is acquired. " The presumption of law being

that the domicile of origin subsists until a change of domicile is proved, the onus of proving the change is on the party asserting it." The residence of Smith in the foreign country is referable, as far as the testimony here goes, solely to his official station as consul. The citizenship and residence, which he formerly possessed in Lafayette county, are presumed to have continued in the absence of proof to the contrary, and we cannot pronounce the action of the court erroneous.

6. E v i - IV. It is urged that the court admitted illegal testimony.
DENCE :
Secondary, as to re- The judges of election for De Roane township, after proving
ary, as to re-
sult of elec- the loss of the duplicate returns, the original also being lost,
tions.
gave the result from their recollection of what the record showed. That was permissible. *Dixon v. Orr,* 49 *Ark.,* 238. One of the judges for Conway township proved that the duplicate returns from that township had gone into the hands of one Morris, and that Morris had informed him that it was lost. The judges were permitted to show its contents.

Conceding that the evidence was irregularly received, the defendant was not injured. The witnesses concurred in the statement that the plaintiff received but two votes at this precinct, while they credit 46 to his opponents. The testimony was favorable to the defendant, and he cannot complain of its admission as error.

V. It was proved that the election returns were regularly made to the county clerk and filed by him; that they were abstracted from his office in the night time, without the knowledge or complicity of the clerk or his deputy, and before he had the opportunity to assemble the board of canvassers to ascertain the result. The returns from two precincts were afterwards recovered, and upon its being shown that they were in the same condition as when returned by the election officers, they were admitted as evidence without

objection. The contents of the others were proved by the judges of election, who had made them up from duplicate copies, which the statute requires them to retain, or from their recollection of their contents as before mentioned. This evidence showed that the plaintiff had received more than twice as many votes as either of his competitors, and a good majority over the two combined. The court found that he was duly elected at a legal election, and adjudged that he was entitled to the office.

The judgment must be affirmed.