# CHARLESTON.

GRIFFITH v. COUNTY COURT OF MERCER COUNTY.

Submitted March 27, 1917.   Decided May 8, 1917.

1. MANDAMUS—*Remedy—Title to Office.*
    Mandamus is the proper remedy to induct a person into office who shows a prima facie legal right thereto, and is wrongfully excluded therefrom. (p. 413).

2. SAME—*Right to Office—Pending Election Contest—Effect.*
    The pendency of an election contest between candidates claiming to be elected to fill a vacancy in the office of county commissioner, notwithstanding its determination may incidentally and collaterally affect the rights of a person claiming to be elected at the same election to a full term office as commissioner, is no impediment to his right to apply for mandamus to be inducted into office. (p. 414).

3. COUNTIES—*Commissioners of County Court—Elections—Constitutional Provisions.*
    Section 23, Art. VIII of the Constitution forbids two commissioners of the county court from serving from the same magisterial

district, and when a vacancy is to be filled in the office of commissioner and a commissioner to be elected to a full term, at the same general election, and two candidates for the respective offices are voted for, both of whom reside in the same district, and two other candidates for the respective offices, residing in another district, are also voted for, the election to both offices must be determined at the same time, and in the following manner, viz: The candidate receiving the highest number of votes shall be declared elected, and if the candidate for the other office, receiving the next highest vote, resides in the same district, then the candidate for that office, residing in another district, receiving the third highest vote shall be declared elected. (p. 414).

4. ELECTIONS—*Commissioners of County Court—Election to Vacancy—Notice.*

Failure of the county court to publish notice of an election to fill a vacancy in the office of commissioner, as provided in section 9, chapter 4, Code, does not avoid the election, if it appears that candidates for such office were regularly nominated at a primary election, and were voted for at the general election by the great body of voters. (p. 417).

(LYNCH and RITZ, JUDGES, dissenting).

Original mandamus by Owen P. Griffith against the County Court of Mercer County and others.

*Peremptory writ of mandamus awarded.*

*French & Easley, John R. Pendleton* and *C. W. Merrill,* for petitioner.

*Russell S. Ritz, Sanders & Crockett,* and *H. B. Lee,* for respondents.

WILLIAMS, JUDGE:

Claiming to be elected to the office of commissioner of the county court of Mercer county at the general election, held on the 7th of November, 1916, for a full term of six years beginning on the 1st day of January, 1917, and to be denied a seat on the court and the right to participate in its proceedings, by respondents who claim to constitute said court, relator, Owen P. Griffith, has applied to this court for a mandamus to compel B. B. Hunt and R. D. Patterson, the acting members thereof, to recognize him as a member of said

body and to admit him to office. There is no controversy as to the facts which are as follows: A. B. Calfee, a resident of Rock district in said county, was elected a member of the county court in the year 1912, for a term of six years, beginning 1st of January, 1913, and ending the 31st of December, 1918. Calfee died in 1915 and R. D. Patterson, a resident of Rock district, was appointed to fill the vacancy until the next election, which was the regular election held on the 7th of November, 1916. At that election said Patterson and Allen W. Brown, a resident of East River district in said county, were duly nominated by opposing political parties as candidates for election to fill said unexpired term, and were the only candidates for that office voted for at the election. Relator, a resident of Rock district, and W. V. Peck, a resident of East River district, were likewise nominated by the respective political parties of which they were members, as opposing candidates for the office of commissioner for a full term of six years, beginning on the 1st of January, 1917. A canvass of the returns of the election, made in the manner provided by law, showed that Patterson had received four thousand eight hundred and twenty-five (4825) votes, and Brown, four thousand eight hundred and two (4802) votes; that relator had received four thousand eight hundred and sixty-six (4866) votes, and his opponent four thousand seven hundred and seventy (4770) votes.

Shortly after the election said Patterson took the oath of office, assumed the right to act and is now acting as one of the commissioners of said court, and he and his co-respondent, B. B. Hunt, refuse to permit relator to sit as a member of said court or to participate in its proceedings, on the alleged grounds that said Patterson was already serving by appointment at the time of the election and was entitled to continue to serve until his successor was elected and qualified, and, having received more votes than his opponent at the election, was elected to succeed himself and was thereby continued in office for the balance of the unexpired term; that he was, therefore, lawfully in office before the beginning of the regular term to which relator claims he was elected, and the admission of the latter to a place on the court, both being

residents of the same magisterial district, would be in viola-
tion of section 23, Article VIII of the Constitution, prohibit-
ing two commissioners from the same district from serving
on the court at the same time.

His opponent, Allen W. Brown, contested the election of
Patterson, in the county court, and that contest resulted in
the court's finding, and entering an order so declaring on the
26th of December, 1916, that said Patterson was elected and
was qualified and eligible to fill the office. Thereupon Brown
gave bond, which the court approved, and applied for and ob-
tained an appeal to the circuit court of Mercer county, and
the contest is now pending in that court. It is further urged
that the award of the writ in this case would, in effect, oust
that court of its jurisdiction to determine the question pre-
sented in that case. Because, it is argued, if relator is ad-
mitted to a seat on the court respondent, being a resident of
the same district with relator, is necessarily excluded on ac-
count of the constitutional inhibition upon two commis-
sioners serving from the same district at the same time.

Respondents demurred and moved to quash the alternative
writ and also made return thereto. To the return relator
filed a special replication. The pleadings, however, present
only questions of law to be here determined.

It is admitted that, under the law of this state, mandamus
is the proper remedy to induct a man into office who shows
a clear prima facie legal right thereto and who is wrongfully
withheld therefrom. Whether relator has shown such right
in this case, depends on the proper interpretation of sec-
tion 23, article VIII of the Constitution, and whether or not
it is applicable for the purpose of determining the result of
the voting for county commissioners in this case. That sec-
tion, after providing for the election of three commissioners
at the first election to be held under the constitution, for the
full term of six years, and for the determination among
themselves by lot which one of them shall serve for two,
which for four and which for six years, and for the election,
every two years thereafter, of one member to serve for a
full term of six years, proceeds as follows: "But no two
of said commissioners shall be elected from the same magis-

terial district. And if two or more persons residing in the same district shall receive the greater number of votes cast at any election, then only the one of such persons receiving the highest number shall be declared elected, and the person living in another district, who shall receive the next highest number of votes, shall be declared elected.'' One purpose of this provision of the constitution was a distribution of the commissioners among the different magisterial districts as much as possible, thus preventing any one of them from having an unequal share of representation on the court. The inhibition upon two commissioners serving from the same district is admitted to be imperative. But counsel for respondent argue that he was a candidate for election to fill a vacancy and, having received more votes than Brown, his only opponent for that office, was necessarily elected, and was entitled to his office immediately, whereas relator was a candidate for a full term which did not commence until the 1st of January, 1917, and could have been elected only in case respondent had been defeated by his opponent Brown. Because, they say, respondent was elected to a vacancy and was entitled to the office immediately upon his qualification after the election and had the right to fill it, in any event, until the 1st of January, 1917, and hence, being lawfully in office, he could not thereafter be ousted by the election of another commissioner from the same district. They further contend that each one of the three commissioners' terms is a distinct office, which must be admitted, and that the constitutional provision was intended to apply only to full-term offices, and was made to meet any exigency that might arise at the first election held after the constitution went into effect, and has no application to the present case, which we do not admit. Two members of the court had to be elected at the same election, one to fill a vacancy, or an unexpired term, and the other a full term. Of course whoever was elected to fill the vacancy was entitled to take office as soon as his election should be lawfully determined and he had qualified, whereas the one who was elected to the full term was not entitled to sit until the beginning of the term to which he was elected, which was the 1st of January fol-

lowing the election. But the fact that the one who was elected to the vacancy was entitled to occupy his office before the other's term began, does not determine the case, in fact it has no bearing on the merits of the controversy. It does not determine who was elected. It must be admitted that respondent is a de facto commissioner and is acting as such under colorable title to the office. Because the county court, the tribunal authorized by law to determine the election and qualification of its own members, has declared he was elected. But to argue that he was lawfully elected and entitled to the office as a matter of right, from and after the election, on the ground that he received a greater number of votes than his opponent, and that because he was elected relator was not, for the reason they both reside in the same district and the constitution forbids one of them from serving, is to beg the question. That respondent received more votes than his opponent is not the only fact to be considered in ascertaining whether or not he was elected. The fact that two candidates receiving the highest number of votes cast for commissioners of the county court resided in the same district must also be considered.

The determination by the county court, in a contest between Brown and respondent and to which relator was not a party, that respondent was elected, does not preclude relator from making this application. True relator's rights were there incidentally involved, but only in a manner collateral to the issue, and not having been made a party nor given an opportunity to defend his title, he is not bound by that decision. Moreover, that decision is annulled by the appeal taken to the circuit court, where the case is still pending. Admittedly the only question involved in that contest is a question of law, the same question presented on this application for mandamus. No challenge was there made of the legality of any votes polled for any of the four candidates for commissioner, and no contention that the canvassing board did not correctly certify the number of votes cast for the respective candidates, or that candidate Brown was ineligible for any reason. Hence, no such contest as is contemplated by section 1 of chapter 6 of the Code was there

presented; only a legal question was involved, the application of the constitutional provision to the facts appearing on the certificate of the canvassing board, and the proven and admitted fact that the two receiving the highest number ·of votes resided in the same district. Only four candidates for commissioner were voted for at the election, two to fill an unexpired term and two to fill a full term; and two out of the four were unquestionably elected. Relator and respondent being candidates from Rock district for the full term and the unexpired term, respectively, and Peck and Brown being likewise candidates for the respective terms, from East River district, made it necessary to consider the number of votes polled for all of them in order to properly determine the election of any one of them. This was a matter primarily for the canvassing board, and its refusal to certify the election of relator, who received more votes than any other candidate, is without justification. The language of the constitution is plain and unequivocal. It not only prohibits two commissioners from serving from the same district, but it provides a plain and simple rule for determining which one of two candidates is elected, when they reside in the same district and receive the highest number of votes polled. The application of that rule is not limited to the first election held after the constitution went into effect; it is an abiding rule and applies to the present situation. The terms are "at any election." If it could be said that the framers of . the constitution contemplated that there would be no more than one commissioner to be elected at any election after the first one to be held under the new constitution, then there might be some plausability in counsel's contention. But section 30 of the same article clearly shows that vacancies in the office of commissioner were contemplated, for that section makes provision for filling such vacancies, "until the next general election," thus indicating that the rule was intended to apply to and govern a situation like the present one. If it does not apply here we can scarcely imagine a case where it would be applicable. That relator is a candidate for a full term and respondent for an unexpired term, or that the candidate who happens to be elected to the unexpired term would

be entitled to take office immediately upon his election and qualification, do not affect the rule, which is provided to determine the election of a short term candidate as well as a full term candidate. The election of both are determined at the same time and by the same rule, and the fact that one is entitled to take office before the other, can not affect the question of their election. Relator having received more votes than any one of the four candidates was unquestionably elected, and it follows as an unavoidable sequence that respondent was not elected, they being from the same district. In such case the constitution provides that the person living in another district, receiving "the next highest number of votes, shall be declared elected."

The contention is made that the election to fill the unexpired term is void, because the county court failed to order the holding of the election, and published no notice thereof, as it was required to do by section 9 of chapter 4 of the Code, and consequently respondent was lawfully in office by virture of his previous appointment to hold until the next election, and until his successor is elected and qualified, and his lawful incumbency rendered relator ineligible, both being residents of the same district. The statute just referred to authorizes the county court to fill vacancies, occurring in the office of commissioner, "until the next general election," and further provides that every such vacancy shall be filled at such election by a vote of the people. It does not say the appointee shall hold beyond the election. Assuming, however, but not intending to determine the question, that if, for any reason, the election of a successor to fill the vacancy has failed, he would be entitled, by virtue of section 6, article IV and section 30, article VIII of the constitution, to hold until his successor is elected or appointed and qualified, the failure to publish notice does not, in the present case, avoid the election.

Two cases are cited for the proposition that failure to give notice avoids the election. *People* v. *Cressy*, 91 N. Y. 616, and *Dix* v. *Kerwin*, a Colorado case, reported in 51 Pac. 530. In neither of them was a notice given of a vacancy to be filled, and only a small number of the electors apparently knew it. In both cases the person claiming to be elected ran

without opposition and received only a small fraction of the whole number of votes polled. To those cases may be added the following, which are similar in character: *Foster* v. *Scarff,* 15 Ohio St. 532, and *Secord* v. *Foutch,* 44 Mich. 89. The principle on which all those cases were decided is not applicable to the facts in this case, which are, that there were opposing candidates for the vacant office, regularly nominated by their respective political parties at a preceding primary election, and the electors knew the vacancy was to be filled at the general election, and nearly all of them voted for said candidates. Almost as many votes were cast for them as were cast for the two candidates for the full term office. The general rule in such case, sustained by the great weight of authority, is, that where the statute itself provides, as it does in this state, for filling vacancies at the next general election, and requires notice thereof to be published, the failure to publish the notice will not affect the validity of the election. It was held, in an early New York case, *People* v. *Cowles,* 13 N. Y. 350, that an election to fill a vacancy in the office of justice of the supreme court, caused by the death of the incumbent which occurred too near the time of the election to give the notice required by the statute, was valid, notwithstanding nearly six thousand fewer votes were cast for the candidates for the vacant office than were cast in the same district and at the same time for candidates for a full term office on the same court. The correctness of that decision is recognized, and the cases distinguished in the later New York case cited by counsel. The same general rule is also recognized by the court of appeals of Colorado in the case cited from that state. The court in its opinion there says: "It may be quite true that, if the various parties had held conventions, and nominated parties for different offices, and tickets had been regularly and duly printed, and the clerk had failed to give the particular notice required by section 1170, the election might have been valid, notwithstanding the failure. We are not prepared to hold that this statute is, under all circumstances, and at all times, so far mandatory that a failure to observe its requirements will defeat an election otherwise regularly holden."

There is a clear distinction between the case of a vacancy which is to be filled at a special election to be held at a time and place to be appointed by some officer, or tribunal, authorized by statute to call it, and a case where the statute itself provides for filling a vacancy at the next general election after it occurs. In such case nearly all the authorities hold, that if the body of electors do in fact know the vacancy exists, and candidates are regularly nominated by the various political parties to fill it, and the candidates receive most of the votes cast, such election is valid, even though no notice thereof was published in the manner provided by the statute. It would be hypertechnical and unreasonable to hold that a failure to comply literally with the statute, in such case, would avoid the election. The rules governing the two classes of cases, that is those in which special elections are to be called, and those wherein the statute provides for filling vacancies at general elections, are thus stated in the third point of the syllabus in *Adsit* v. *Secretary of State,* 84 Mich. 420: "An election to fill a vacancy, of which no notice is given, and which is in fact known to but few of the voters, is void. But though the official notice was not given, or, if given, not in the prescribed form, yet if the election has been held, and the great body of the voters had notice *in fact* of the vacancy, this, coupled with the fact that they are presumed to know that the law requires the vacancy to be filled at the next election, is sufficient, even though many refrained from voting because of a difference of the construction of the law." In line with this doctrine are the following authorities: *State ex rel. Leal* v. *Jones,* 19 Ind. 356; *Dishon* v. *Smith, County Judge,* 10 Iowa 212; *Jones* v. *Gradley,* 20 Kan. 584; *Stevens* v. *The People ex rel., etc.,* 89 Ill. 337; *Commonwealth* v. *Smith,* 132 Mass. 289; *State* v. *Skirving,* 19 Neb. 497; *State* v. *Bernier,* (Minn.), 38 N. W. 368; *State ex rel. Lutfring* v. *Goetze,* 22 Wis. 363; Mechem's Public Officers, Sec. 174; and 15 Cyc. 322-3. "Where a city charter requires a vacancy in a city office to be filled at the next annual election, and directs the city clerk to give notice of the election, and of the offices to be filled, and the notice actually given by him makes no mention of the vacancy, this default

of the clerk does not invalidate the election for this vacancy."
*The People* v. *Hartwell,* 12 Mich. 508.

In the present case, relator and his opponent Peck, candidates for the long term, received together 9668 votes, and respondent and Brown, opposing candidates for the unexpired term, together received 9595 votes, only 73 less than the combined vote of the two candidates for the full term. All the candidates were legally nominated at the preceding primary election. In view of these facts it can not be said the voters were not as fully informed of the election to fill the vacancy as if notice thereof had been published. Our conclusion is to award the writ.

*Peremptory writ of mandamus awarded.*