# O. L. ENGEN v. MERCHANTS & MANUFACTURERS STATE BANK.[1]

July 31, 1925.

No. 24,582.

**Corporation liable when unfaithful officer perpetrates fraud for his own benefit on innocent third party.**

1. The rule which fastens liability upon a corporation for the wrongful and unauthorized act of an officer is not confined to cases where the act is done in furtherance of the business of the corporation. If, while acting within the apparent scope of his authority, an officer is unfaithful to his trust and perpetrates a fraud on an innocent third party, the corporation is liable, notwithstanding the fact that the officer was really acting for his own benefit and not for the benefit of the corporation.

**When defrauded party may affirm transaction and sue for damages.**

2. Where the transaction in which the officer made the misrepresentation was completed before the fraud was discovered, the party defrauded may affirm it and sue for damages.

**Error to direct verdict for defendant when president of city bank selected "good bankable paper" for its country correspondent.**

3. The evidence made a case for the jury upon the issue of fraud, where it appeared that the president of a city bank agreed to sell to a country bank "good bankable paper" and charge the amount thereof against the latter's deposit account, the selection of the paper being entrusted to the president.

1. See Corporations, 14a C. J. pp. 349, § 2212, 351, § 2212 (Anno).
2. See Contracts, 13 C. J. p. 395, § 304.
2. See Fraud, 27 C. J. p. 73, § 208.

Action in the district court for Hennepin county to recover for false representation. The case was tried before Molyneaux, J., who

[1]Reported in 204 N. W. 963.

directed a verdict in favor of defendant. Plaintiff appealed from an order denying his motion for a new trial. Reversed.

*Elliott, Doll & Coursolle*, for appellant.

*Joss, Ohman, Fryberger & Parker*, for respondent.

PER CURIAM.

Action to recover damages for an alleged fraudulent sale of commercial paper by the defendant to the plaintiff. At the close of the testimony, the trial court directed a verdict for the defendant. From an order denying his motion for a new trial, the plaintiff appealed. The appeal involves the single question whether the court correctly directed a verdict in favor of the defendant.

The Horace State Bank is a small bank, with a capital of $10,000, located at the village of Horace, near Fargo, in the state of North Dakota. O. N. Hatlie was its president. He resided at Fargo and the bank was largely in charge of its cashier. The defendant bank was its Minneapolis depositary and correspondent. When Hatlie went to Minneapolis, it was his custom to go to the defendant bank and transact his business with its president, A. M. Hovland.

The defendant bank was also the Minneapolis depositary and correspondent of the First State Bank of Lansford, North Dakota, of which Hovland was also president.

In December, 1917, the Horace bank had a balance of over $50,000 in the defendant bank and desired to invest a portion of it in good commercial paper. Hatlie called at the defendant bank, saw Hovland there, and arranged to have about $20,000 worth of such paper sent to the Horace bank. Hatlie left the matter of selecting the paper to Hovland. On December 19, 1917, it was sent by the defendant bank to the Horace bank. It was received by the cashier and entered in the books of the bank, but Hatlie was not at Horace and did not see it until some time in January.

The paper consisted of notes and a certificate of deposit for $2,000, issued by the Lansford bank, which the bank subsequently paid. The notes were executed by persons residing in the vicinity of Lansford, were payable with one exception to the First State Bank of

Lansford, and were indorsed without recourse. Accompanying them was a separate guaranty of payment, signed by Hovland and two other persons but not by the bank. The full amount of the paper was $19,699.15. The defendant bank charged that amount against the deposit account of the Horace bank on December 19 and gave the Lansford bank credit therefor.

It appears that the Lansford bank had been carrying the notes, or the indebtedness they represented, for some time. It is claimed that the makers of the notes were unable to pay them, and that old notes had been renewed to make them appear as good current paper, and that the defendant bank, under Hovland's management as its president, sent them to the Horace bank as good bankable paper. It is insisted that Hovland's representations to Hatlie were beyond question knowingly false and made to deceive. The defense is that the transaction was for the benefit of Hovland and the Lansford bank, and that at no time was Hovland acting as the representative of the defendant bank.

The testimony was directed principally to the quality of the paper and to the conversation between Hatlie and Hovland when it was purchased. Hatlie testified that he understood that he was dealing with the defendant bank, through its president, and that he did not know at the time that Hovland was in any way connected with the Lansford bank, while Hovland testified that he told Hatlie the paper would come from the Lansford bank and that he was president of that bank.

When Hatlie dealt with Hovland he had a right to suppose, nothing to the contrary appearing, that Hovland was engaged in transacting business for the defendant bank as its president, and that he, Hatlie, was dealing with the defendant bank. At the trial, testimony was introduced which tended to show that the notes in question were practically worthless and that Hovland knew it at the time they were sent to the Horace bank. It appeared that Hovland was interested in the Hovland, Walstead Land Company and in the Hovland, Walstead Farm Securities Company, both engaged in business at Lansford, with offices behind the room occu-

pied by the Lansford bank; that Walstead was vice-president of the companies and that Nesvik was a salesman employed by the land company. They are the men who joined with Hovland in the guaranty sent to the Horace bank.

The trial court held that it was for the jury to determine whether the defendant bank was liable for Hovland's acts and representations. Then a question arose as to the legal effect of the guaranty which accompanied the notes. As to that the court held that the guaranty was sufficient notice to the Horace bank that it was dealing, not with Hovland as president of the defendant bank, but with him as president of the Lansford bank, and accordingly a verdict in defendant's favor was directed.

We are of the opinion that the case should have gone to the jury.

Hovland's statement, if he made it, that he would send good bankable paper to the Horace bank was made by the president of the bank, at his desk in the banking house, and could have but one meaning to a person not knowing that he was connected with any other bank.

Hatlie and Hovland agree that no formal guaranty of the paper was expected. The original guaranty was not produced at the trial. Hatlie testified that a later guaranty, received in evidence over plaintiff's objection, was not a true copy of the original. It was upon this instrument that the trial court based its order for a directed verdict. The instrument reads in part as follows:

"Whereas, J. G. Walstead, J. K. Nesvik and A. M. Hovland on behalf of First State Bank of Lansford, N. Dak. with its principal office at Lansford, North Dakota, hereinafter known as parties of the first part, which said bank wishes to rediscount notes or sell with or without recourse, from time to time to Horace State Bank, Horace, N. Dak. or assigns, hereinafter known as party of the second part; * * *"

Then follows the guaranty which indemnifies the Horace bank against loss on "loans, discounts, credits or other accommodations already made or granted, or which may be hereafter made or granted by the said party of the second part, to the said J. G. Walstead,

J. K. Nesvik & A. M. Hovland or 1st State Bank of Lansford, N. Dak."

The rule which fastens liability upon a corporation for the wrongful and unauthorized act of an officer is not confined to cases where the act is done in furtherance of the business of the corporation. A corporation selects its officers and places them in charge of its business. If one of them is unfaithful to his trust, and, while acting within the apparent scope of his authority, perpetrates a fraud on an innocent third party, the corporation is liable, notwithstanding the fact that the officer was really acting for his own benefit and not for the benefit of the corporation. 5 Fletcher, Corp. § 3346; Picha v. Cent. Met. Bank, 161 Minn. 211, 219, 201 N. W. 315, 203 N. W. 617.

In the present case the evidence would justify a jury in finding that Hovland apparently spoke for and represented the defendant bank throughout the transaction, and that Hatlie, as the representative of the Horace bank, was justified in relying upon the apparent authority Hovland assumed to exercise. It would warrant a finding that Hatlie was justified in the belief that the paper his bank was purchasing was paper held by the defendant bank. The relation between the two banks was such as to invite the confidence of the Horace bank. So far as that bank was concerned the transaction was closed when the order for the paper was placed and the defendant authorized to charge the amount thereof against the deposit account of the Horace bank.

The evidence would also justify a finding that Hovland was unfaithful to the trust reposed in him; that he unloaded upon the Horace bank worthless paper of the Lansford bank, and that neither Hatlie nor his bank had knowledge of the facts until after the fraud had been perpetrated. That the money to pay for the paper was taken from funds the Horace bank had deposited with the defendant bank is not disputed. Unquestionably a representation that the notes were "good bankable paper" would be a representation of fact, and the evidence would support a finding that such a representation was made, was false, was made with intent to deceive and was relied on.

To meet all this, the argument in respondent's behalf is that it was shown beyond question that the notes never belonged to defendant and that it acted only as the medium through which they were transferred from the Lansford bank to the Horace bank; that, as soon as the notes and guaranty came to the Horace bank, it must have discovered that it was getting paper from the Lansford bank and not from the defendant bank, and, if it was dissatisfied, it was its duty to return the paper to the defendant and demand that the amount charged against it be credited back. The thought underlying the argument is that as soon as a buyer discovers that the seller has fraudulently palmed off something the buyer did not purchase, he must repudiate the whole transaction, return what he received, and demand the restoration of that with which he parted.

We do not so understand the law. An action to recover damages for fraud inducing the making of a contract is not based on the contract but on tort. It proceeds upon the theory of an affirmance of the contract alleged to have been fraudulently procured. Where the contract is wholly executory when the fraud is discovered, the defrauded party may waive the fraud and lose his right to damages by performing his part of the contract, Humphrey v. Sievers, 137 Minn. 373, 163 N. W. 737, and cases cited, but this is not such a case. The transactions which followed the conversation between Hovland and Hatlie had been completed before the Horace bank discovered or had any means of discovering the true state of facts. The title to the notes had been transferred. The Horace bank had paid for them and they had been delivered to it. When it discovered that Hovland had deceived Hatlie, it had an election of several remedies. It might keep the notes and sue for the damage it sustained by reason of the fraud, or it might rescind by its own act and sue to recover what it parted with, or it might sue for a rescission by the court and recover what it parted with upon such conditions as the court should prescribe. Dun. Dig. § 1815. It has elected to pursue the first of these remedies.

Defendant cannot escape liability on the theory that the transaction was not completed until the Horace bank decided to keep the

notes and the guaranty, and that before it came to that decision it must have discovered from the guaranty that Hovland had not acted in defendant's behalf, but in behalf of himself and the Lansford bank, hence there was a waiver of any fraud of which he may have been guilty. If the Horace bank had paid for the notes after it received them and the guaranty, there would be ground for a claim of waiver, but, in the absence of anything in the nature of performance of the contract of purchase and sale after knowledge of the facts, the Horace bank is not prevented from asserting its claim for damages.

The rule that a promise to do an act in the future cannot be made the basis of a charge of fraud unless the promisor had no present intention of keeping his promise, is not applicable in the situation presented here. It was not necessary to plead a preconceived plan not to do what Hovland promised to do. See Smith v. Vosika, 163 Minn. 12, 203 N. W. 428.

The time intervening between the making of the representation and the execution of the fraud was so short as to warrant the inference that Hovland conceived the scheme of relieving the Lansford bank of paper of doubtful value as soon as Hatlie broached the subject of the purchase of notes and that he never had any intention of furnishing bankable paper which belonged to defendant when the understanding was had. See Guy T. Bisbee Co. v. Granite City Inv. Corp. 159 Minn. 238, 199 N. W. 14.

Order reversed.