## CHARLESTON.

STATE *ex rel.* RAY LAMBERT *v.* THE BOARD OF CANVASSERS OF NICHOLAS COUNTY *et al.*

(No. 6472)

Submitted February 26, 1929. Decided March 12, 1929.

110

*Emmett Horan, M. F. Matheny* and *Rummel, Blagg &
Stone,* for relator.

*John T. Simms, E. H. Morton, O. C. Lewis* and *A. N. Breck-
enridge,* for respondents.

HATCHER, JUDGE:

Ray Lambert and W. E. Morton were opposing candidates
for the office of sheriff of Nicholas county at the regular elec-
tion in 1928. After the returns were canvassed, Lambert
demanded a recount. In order to facilitate the recount, it
was agreed between the candidates that in case either one
questioned the manner in which the canvassing board pro-
posed to count any particular ballot it should be laid aside
until all the unquestioned ballots were counted, and then the
disputed ballots should be taken up and disposed of. At the
termination of the count of the undisputed ballots, 210 bal-
lots had been laid aside under this agreement. A tentative
recount was made of the 210 ballots on November 20, 1928,
when 50 were counted for Morton, and 61 for Lambert,
making a total at that time of 3794 votes for each candidate.
No official declaration was made of the results of the recount
that day. It was resumed on December 3, 1928, when an
order was entered stating that after counting and passing
upon all the votes cast for the respective candidates, the board
found that Morton received 3836 and Lambert 3826 votes.
The order recited that pursuant to the agreement aforesaid,
210 ballots had been laid aside for final determination, and
of that number the board counted 91 votes for Morton, 93

for Lambert, and the remainder for neither candidate. Lambert contested the recount of the 210 ballots in this Court by a mandamus proceeding which was instituted December 4th and decided December 12, 1928. Counsel for both parties agreed at the hearing that the Court should assume that Morton had 3745 votes and Lambert 3733, exclusive of the 210 ballots. Upon the count of the 210 ballots here, this Court found that 50 ballots had been cast for Morton and 62 for Lambert. The 50 ballots were added to the 3745 conceded to Morton, making his total 3795, the 62 ballots were added to the 3733 conceded to Lambert, making him a like total of 3795, and the canvassing board was ordered to act in accordance therewith.

A rehearing was requested by Lambert on December 14th, on the ground that his representation that Morton received 3745 undisputed votes was erroneous; that the number had been obtained merely by subtracting from Morton's total vote of 3836, the 91 disputed ballots which the board's order of December 3rd, recited had been counted for Morton; that the recital was incorrect, there having been, in fact, 92 contested votes counted for Morton; and that Morton accordingly received only 3744 uncontested ballots. The board met on December 20, 1928. At that time the petition to rehear was pending in this Court; the order entered on December 12th had not become final, and the board had not been officially advised by this Court of its determination. But the board, assuming to act in accordance with the order of December 12th, awarded 3795 votes to each candidate, and then decided the tie by electing Morton. Morton gave bond, took the oath of office and assumed its duties on January 1, 1929. On January 14th the petition of Lambert to rehear was denied. Lambert then requested in writing two members of the board (the other member was out of the county) to reconvene and correct the mistake in the recital of December 3rd, as to the 91 votes. The two members met as the county court on February 2, 1929, but took no action on Lambert's request. On February 7th, Lambert instituted the present mandamus proceeding in this Court. Its purpose is to have the alleged mistake as to the 91 votes corrected, to require the board to

take the total of all the uncontested ballots cast for Morton as 3744 and add thereto the 50 ballots heretofore counted by this Court in his favor, and take the total uncontested ballots cast for Lambert as 3733 and add thereto the 62 ballots heretofore counted by this Court in his favor, and enter an order declaring the result of the election to be that Lambert received 3795 and Morton 3794 votes.

Morton resists on the following grounds: (1) There is no mistake in the recital as to the 91 contested votes. (2) If there be a mistake in the recital, Lambert is guilty of such negligence in not discovering it at or near the time of its entry as should now preclude a correction. (3) Lambert's agreement in the former suit that there were 3745 uncontested ballots for Morton is *res judicata*. (4) Mandamus is not the proper remedy.

(1) Three tally sheets were kept of the recount, one by Mrs. C. E. Stephenson, deputy clerk, acting for the canvassing board, one by O. G. Robinson, acting for Lambert, and one by A. E. Dorsey, acting for Morton. The clerk of the canvassing board swears that the tally sheet kept by his deputy is in the same condition now as when the recount terminated. That tally sheet is in evidence and shows the votes for Morton tabulated as follows:

| BEAVER DISTRICT | Uncontested Ballots Counted for Morton | Contested Ballots Counted for Morton | Total |
|---|---|---|---|
| Precinct No. 1 | 177 | 5 | 182 |
| 2 | 53 | 1 | 54 |
| 3 | 53 | 1 | 54 |
| 4 | 180 | 0 | 180 |
| 5 | 258 | 3 | 261 |
| 6 | 102 | 1 | 103 |
| 7 | 103 | 2 | 105 |
| 8 | 177 | 5 | 182 |
| 9 | 130 | 1 | 131 |
| 10 | 159 | 3 | 162 |
| 11 | 141 | 7 | 148 |
| 12 | 41 | 0 | 41 |

GRANT DISTRICT

| | | | |
|---|---|---|---|
| Precinct No. 1 | 149 | 7 | 156 |
| 2 | 100 | 2 | 102 |

HAMILTON DISTRICT

| | | | |
|---|---|---|---|
| Precinct No. 1 | 104 | 4 | 108 |
| 2 | 188 | 1 | 189 |
| 3 | 68 | 1 | 69 |
| 4 | 65 | 1 | 66 |

JEFFERSON DISTRICT

| | | | |
|---|---|---|---|
| Precinct No. 1 | 94 | 2 | 96 |
| 2 | 45 | 3 | 48 |
| 3 | 74 | 8 | 82 |
| 4 | 54 | 0 | 54 |

KENTUCKY DISTRICT

| | | | |
|---|---|---|---|
| Precinct No. 1 | 45 | 1 | 46 |
| 2 | 148 | 7 | 155 |
| 3 | 83 | 3 | 86 |
| 4 | 109 | 8 | 117 |
| 5 | 12 | 0 | 12 |

SUMMERSVILLE DISTRICT

| | | | |
|---|---|---|---|
| Precinct No. 1 | 329 | 8 | 337 |
| 2 | 62 | 2 | 64 |
| 3 | 35 | 0 | 35 |

WILDERNESS DISTRICT

| | | | |
|---|---|---|---|
| Precinct No. 1 | 174 | 2 | 176 |
| 2 | 91 | 0 | 91 |
| 3 | 74 | 1 | 75 |
| 4 | 67 | 2 | 69 |

The above columns are not totalled on the tally sheet, but we have added them with the following results: Morton received 3744 uncontested and 92 contested ballots, making a total of 3836. The tally sheet kept by Robinson is also in evidence. Its integrity is vouched for by him, and it corresponds with the tally sheet kept by the deputy clerk. The one kept by Dorsey is not in evidence. The affidavit of Dorsey is filed (treated as a deposition by agreement), but he makes no reference to the number of contested ballots which his tally sheet shows were counted for Morton. The 210 disputed ballots, which have been constantly in the custody of the clerk since the former suit, were returned to us in this

proceeding. On each of those ballots the members of the canvassing board, over their own signatures, endorsed the manner in which the ballot was counted. We find 92 ballots endorsed as counted for Morton. It is therefore beyond question that the recital in the order of the board as to the 91 ballots is an error, there being in fact 92 of such ballots.

The affidavit of Dorsey states that his tally sheet records 3745 uncontested votes for Morton. This discrepancy is fully explained by the evidence in this manner: in Precinct No. 5, Beaver District, Dorsey's tally gives Morton 259 uncontested votes while the official tally of the deputy clerk gives Morton 258. This difference was discovered during the recount, and Morton reserved the right to count that precinct again. As there were two ballots in the precinct which had been counted for Morton with which Lambert was not entirely satisfied, he also made a like reservation. But on December 3rd when the recount was otherwise completed, each party waived his demand for another count of that precinct and agreed that it should not be recounted. The effect of this waiver and agreement was, of course, an acceptance of the official tally as to that precinct. The total of the uncontested votes for Morton is based entirely on the official tally sheet and it does not include the extra tally given him by Dorsey in the above precinct. Consequently, there is nothing in the affidavit of Dorsey which reflects in any manner on the integrity of the official tally sheet. Two witnesses who examined it state that in their opinion one block of the tallies of the said precinct indicates an erasure. The opinion of these witnesses is of no consequence in view of the fact that Morton acquiesced in the 258 votes accorded him in that precinct by the official tally and also because of evidence that from time to time during the recount mistakes would be made, and when discovered would be erased. Besides, we have carefully examined with a magnifying glass the place on the sheet designated by the witnesses, and we discern no traces of an erasure. There is nothing in the evidence indicating that the official tally sheet does not correctly record the final count of the ballots as made by the canvassing board on December 3rd.

Counsel ask: ''Is it possible that the finding and declara-

tion of the result of the recount in Nicholas county, made under the sanction of official authority by the board of canvassers, and in pursuance of the findings of this Court, is of less dignity than the belated allegation that the deputy clerk's tally sheet does not accord with the official findings of the board?'' It is not necessary here to classify as to dignity, the tally sheet, the order of the board and the order of this Court. Counsel have failed to recognize that there is no mistake on the tally sheet, that the order of the board does contain a mistake, that the mistake of that order is reflected in the order of the Court, and that his is a proceeding directly attacking the order of the canvassers. Counsel would treat the tally sheet as if it bore no relation to the board. But that sheet is as much the offspring of the board as the order, and just as legitimate. Both were prepared by official assistants of the board and under its direction. Both are its official records. They are not independent but correlative. The sheet is the source of the order. The order is simply a permanent record of the sheet and to be correct must correspond with the sheet. As the order does not accord with the sheet, the order loses its dignity in this proceeding.

(2) Morton points to the fact that Lambert was represented at the recount by Robinson and that Robinson's tally sheet was at his disposal, and contends that had Lambert been at all diligent, he would have discovered the alleged error in the recital and for lack of such diligence he should now be denied the right of correction. The evidence shows that the clerk was the only one who had counted the tallies of votes given to Morton prior to December 12, 1928. On December 3rd, when the clerk made and announced the result of his addition, the exact number of contested ballots given Morton by the board, was not of peculiar significance to Lambert. The significant number to him then, was the total accorded Morton of 3836 votes as against his 3826 votes. It appears that both parties had the utmost confidence in the clerk. He was acting officially and no reason appears why Lambert should have questioned his accuracy. The law affords a presumption in favor of the correctness of official work. Is Lambert to be penalized because he accorded to the

clerk a presumption the law sanctions? An accepted test in such cases is the care and diligence of a person of reasonable prudence. Pom. Eq. Juris., (4th ed.), section 856, p. 1748. Morton himself relied on the addition of the clerk. Counsel for both parties and the friends of both parties placed the same confidence in the clerk. No one thought it worth while to check his summary of the contested ballots. Is it not fair to assume that some of those who are shown to have accepted the clerk's figures are reasonably prudent men? If so, the law cannot now condemn Lambert for doing just what those reasonably prudent men did, particularly in view of the fact that Morton shares the blunder with him.

(3) The contention of Morton that the representation as to the uncontested ballots made by Lambert in the other proceeding is now *res judicata*, is strongly presented in his brief as follows:

"In the former proceeding in mandamus the parties were the same, the subject matter of litigation the same, and the cause of action the same. The subject the same in that the former proceeding had for its object the determining of who was entitled to be declared elected to the office of sheriff for the County of Nicholas, and to determine that question it is essential to ascertain and determine how many votes each candidate was entitled to receive and have counted for him, those in dispute as well as those not in dispute. * * * The disputed ballots to which each was entitled were ascertained and determined by this Court; the undisputed ballots to which each was entitled were solemnly and correctly admitted by the parties in open court, and upon that admission, invited and directed the Court to act. Each party is bound by that admission and each party is estopped from now denying it. The facts found by the Court and the facts admitted by the parties were carried into and became a part of the Court's judgment and order. That order is final. The matters in dispute, and the facts presented to the Court in this proceeding have been adjudicated. That adjudication is final; it ends the controversy. It does and should estop the parties from ever there-

after calling in question the number of votes to which each was entitled for the office of sheriff.''

Unfortunately for Morton the facts do not support his argument. Let us look first to the purpose of counsel for Lambert in stipulating as to the uncontested ballots in the former proceeding. It was, as stated by him at the time, merely to demonstrate to the court that if the contested ballots were counted as prayed for in the petition, the result of the election as determined by the canvassing board would be changed and the petitioner was therefore not asking the court to do a vain or useless act. (See *Ryan* v. *Miller*, 82 W. Va. 490; *Hawkins* v. *Bare & Carter*, 63 W. Va. 431.) This Court said in *State* v. *McEldowney*, 54 W. Va. 695, that to render a former decree a bar as *res judicata* in a second suit, the matter of the second suit ''must have been actually in issue in the first.'' Let us then look to the pleadings in the former case as the obvious repository of the issues. The petition does not mention the uncontested ballots. Its allegations relate only to the 210 contested ballots. Its prayer is as follows:

''Your petitioner therefore prays that he be awarded an alternative writ of mandamus directed to the said Otto Smith, Clyde Roop and C. C. Coe, constituting the Board of Canvassers of Nicholas County, commanding them to forthwith reconvene as such canvassing board, and to count as votes having been cast for your petitioner for the said office of Sheriff the ballots so rejected as aforesaid, and each of them, and to reject as votes cast for the said Morton for said office the several ballots so counted by said Board of Canvassers as having been cast for said Morton for the said office of Sheriff as aforesaid, and to decide and determine the force and effect of said ballots, and each of them, according to law; to cancel and annul the certificate of election heretofore issued to W. E. Morton, and to declare your petitioner to have been duly elected to said office, and to issue to him a certificate of election as required by law; or else show cause, if any they can, why the same shall not be done; and that this Court will cause due notice

of this proceeding to be served upon the said W. E. Morton.''

It will be noted that the prayer does not request either a finding by this Court as to the undisputed ballots, or a command in relation thereto. They were not in litigation. The finding of this Court thereon was accordingly beyond the issues presented by the petition, and was not necessary to a proper decision thereof. *It was, in fact, so regarded at the time by the Court.* The order entered on December 12th refers to the 3745 undisputed ballots reported in favor of Morton as ''not involved in this proceeding.'' In refusing to rehear the case we expressly declared that Lambert's rights as stated in the petition to rehear ''must be otherwise asserted.'' Morton did not then consider the uncontested ballots as a part of the controversy. In a reply filed by him to the petition to rehear he alleged that the demand of Lambert relative to the undisputed ballots, ''would extend the peremptory writ of mandamus beyond the scope set out in the petition.'' His brief in support of his reply amplifies that allegation as follows: ''The petition filed by the relator and the alternative writ of mandamus relate to certain specific ballots counted for Morton or not counted for Lambert by the board of canvassers of Nicholas county. The mandamus proceeding was to compel the board of canvassers to count certain ballots in the manner prayed for by the relator. This was the only object of the action.''

So from the mouth of Morton himself comes the declaration that there was only one issue in the former case, the counting of the contested ballots. From the very order which he now says is a former adjudication comes also the declaration that the uncontested ballots were ''not involved'' in that proceeding. If a matter was not pleaded, or if it was not ''fully and fairly investigated and tried'', and was not a ''decisive question'', a ''turning point in the case'', it assuredly was not ''solemnly and finally adjudicated.'' Black on Judgments (2nd ed.) 2 Vol., sec. 614. The doctrine of *res judicata* has no application to a fact which was not necessarily involved in the litigation, but which was only incidental

or collateral to the issue, even though judicially passed upon. This principle is sustained by an unbroken line of West Virginia decisions, and is generally accepted as well settled law. "But facts in controversy on the trial of an issue but not necessarily involved in the issue, though ever so important in its determination, are not settled by a judgment on the issue, but are open to controversy in any other suit between the same parties or their privies." *Beckwith* v. *Thompson,* 18 W. Va. 103. *Doonan* v. *Glynn,* 28 W. Va. 715; *Stafford* v. *Sheppard,* 57 W. Va. 84, 89; *Perdue* v. *Ward,* 88 W. Va. 371, 374. "The rule has always been regarded as well settled, from the earliest authorities down to the present time, that the judgment, either of a court of concurrent jurisdiction or of a court of exclusive jurisdiction, is not conclusive of any matter which was incidentally cognizable in that action, or which came collaterally in question, nor of any matter to be inferred by argument and construction from the judgment. The estoppel of a judgment extends only to the question directly involved in the issue, and not to any incidental or collateral matter, though it may have arisen and been passed upon." Black, *supra,* sec. 611. Freeman on Judgments (5th ed.) 2 Vol., sec. 690; *Coit* v. *Tracy,* 8 Conn. 268; *People* v. *Johnson,* 38 N. Y. 63, 65; *Reynolds* v. *Stockton,* 149 U. S. 254, *st seq.;* 15 R. C. L., subject Judgments, sec. 452, 453; 34 C. J., subject Judgments, sec. 1341.

(4) Counsel challenge the remedy on the theory that mandamus will not lie to enforce a right which is in substantial dispute or as to which there is substantial doubt; to correct an error which was the result of a judicial or quasi judicial act; to compel the performance of a duty already discharged; or to oust an official acting under a certificate of election.

There is no evidence supporting the recital as to the 91 votes; the evidence that the recital is erroneous is absolute; therefore there is no ground for substantial dispute, much less doubt, in this case. It is the duty of a canvassing board to correctly declare in an order the results of a recount. That duty requires no discretionary or judicial action, but is clerical and purely administrative. *People* v. *Austin,* 46 N. Y. Supp. 526, 527; *Marcum* v. *Ballot Comm'rs.,* 42 W. Va.

263, 265. It was the duty of the board to correct this mistake. That duty has not been discharged. The authorities against the ouster of an official by mandamus are from other jurisdictions. Mandamus has been repeatedly used in West Virginia "to admit one to office" when the relator has established a clear right thereto. *Martin* v. *White*, 74 W. Va. 628; *Griffith* v. *County Court*, 80 W. Va. 410.

The right of Lambert is clear, and the peremptory writ will issue.

*Writ awarded.*

MAXWELL, JUDGE, concurring:

There is nothing which lies more deeply at the root of American governmental institutions than the principle of majority rule. The present order of things cannot continue except on that basis. Destroy it and political chaos will follow. Where there are two candidates for a public office, the one receiving a majority of the votes, whether that majority be one or one thousand, is entitled to the office, if there be no fraud and if by his conduct he has not precluded himself from the right to enjoy the office.

In the instant contest we deem it mathematically demonstrated, as is clearly brought out by JUDGE HATCHER, that the tallies of the uncontested votes of the two candidates are, Morton 3744, Lambert 3733. On the former proceeding we found that of the 210 contested ballots brought to us on the legal questions thereby presented, 50 were for Morton and 62 for Lambert, adding these latter numbers to the figures above, we have Morton 3794, Lambert 3795. Thus it appears that if Morton is to be sheriff, he will be a minority sheriff. Why should this be? How can it be squared with the basic principle of democratic government as above stated? What would be the justification? The reply by Morton is that the matter has been adjudicated. *Res adjudicata!* He says that because in the former proceeding we considered his uncontested vote to be 3745, whereunto we directed that there be added the 50 contested votes to which we ascertained he was entitled, thereby making a total of 3795,—a tie with Lambert,

—that the matter is forever closed on that basis. What is the doctrine of *res adjudicata?* It is a principle of public policy the purpose of which is to put to rest matters which have been heard and determined; to put an end to litigation. Parties cannot be heard again to raise the same matter as between themselves in the same or any other form or forum. But an adjudication is not a bar as *res judicata* as to a matter not in controversy. *Hornor* v. *Gas Company,* 71 W. Va. 345. True, there need not have been former issue but the matter must have been controversial and involved in the suit. *Alderson* v. *Coal Land Company,* 81 W. Va. 411; *Laurenzi* v. *Distilling Company,* 90 W. Va. 794. Among other essentials to the operation of the doctrine, there must be identity of the subject matter,—the thing sued for. 15 R. C. L., 952. "A cause of action between persons who were parties to a former adjudication, set up in a subsequent action between them, is not *res judicata* by the former decision, unless it is identical with the one actually or constructively heard and determined in the former suit." *Lutz* v. *Williams,* 84 W. Va. 216. We find it declared in England a century and a half ago that a judgment is not "evidence of any matter which came collaterally in question * * *" nor of any matter incidentally cognizable * * *." *The Duchess of Kingston's Case.* 20 How. St. Tr. 537; 2 Smith's Leading Cases, part 2, 734. A judgment is not conclusive of every question which might have been made in the case, as is sometimes erroneously said, but only of matter that had of necessity to be determined before the judgment could have been given." *Hart* v. *Bates,* 17 S. C. 35, quoted with approval in *Perdue* v. *Ward,* 88 W. Va. 371.

There does not exist between the instant proceeding and the former one an identity of the thing sued for. The primary object of the former proceeding was to obtain judicial determination of the rights of the parties under the 210 contested ballots. All else was secondary and incidental. The primary object of the present proceeding is to compel the canvassing board to declare the result of the election on the correct basis of 3744 uncontested and 50 contested votes for

Morton, total 3794, as distinguished from the false basis of 3745 uncontested and 50 contested, total 3795, as erroneously set forth in the former case. It thus appears that there does not exist in this matter the identity of fact essential to render the first proceeding a bar to the second.

We find no fraud in the whole situation. The entire difficulty come about because on the hearing of the former proceeding in this Court, counsel erroneously stipulated that Morton's uncontested votes aggregated 3745 when the correct figure was 3744. Why should the candidate who was successful at the poles be deprived of his office because of this mutual mistake of fact  The ends of justice do not demand it, nor does the doctrine of *res adjudicata* justify it. That wholesome doctrine is meant to promote the public weal by terminating controversies. Never should it be employed as a cloak for injustice nor as an engine of destruction of the rights of a suitor.

If the present proceeding involved a matter which had been directly passed upon and adjudicated in the former case,—a matter involved in the issue,—then the reason of the doctrine of *res adjudicata* and its applicability here would be plain. But since this proceeding does not involve a matter directly determined and adjudicated in the former case it would be a strained and forced construction of that doctrine that would make it fit here so as to defeat the will of a majority of the voters of Nicholas county who cast their ballots for sheriff at the late election and to deprive the candidate of their choice for that office of the emoluments thereof.

LITZ, JUDGE, concurring:

I concur in the final conclusion of the Court, but cannot fully accept the doctrine of *res judicata* as defined and applied in the opinion written by JUDGE HATCHER or in the concurring note of JUDGE MAXWELL. I think, except for mutual mistake of the parties, the petitioner would be precluded by the former adjudication. I am opposed to the view that the present issue was not involved in the former proceed-

ing, and am also of opinion that all facts (contested or *ad-mitted*) forming the basis of the judgment therein are *res judicata*.

Title to the office of sheriff of Nicholas county, the issue in the former case, is the issue in this proceeding. The first case was brought to review the rulings of the board of canvassers on certain contested ballots and to compel the board "to cancel and annul the certificate of election issued to W. E. Morton, and to declare petitioner to have been duly elected to said office, and to issue to him a certificate of election as required by law." The petition in the present proceeding prays for a writ of mandamus compelling the board of canvassers (1) to change its orders of December 3 and 20, 1928, so that it will be made to appear that respondent, W. E. Morton, received 3743 and the petitioner 3733 uncontested ballots; (2) to set aside its order of December 20, 1928, in so far as it declares the election of said W. E. Morton to the office of sheriff, and (3) to "enter a proper order declaring petitioner, Ray Lambert, to have been regularly elected sheriff of Nicholas county." In view of this situation, it will not do to say that the former judgment was limited to a review of the contested ballots. It was not, and could not have been, so limited. The board of canvassers was required by that judgment not only to accept the ruling of this Court, giving to Morton 50 and to Lambert 62 of the contested ballots, but to enter an order showing that each had received 3795 votes. The rulings of the board of canvassers on contested ballots could not have been reviewed unless it had been made to appear from a consideration of both the contested and uncontested ballots that Lambert had received, at least, as many votes as his opponent. Otherwise, the questions involving the contested ballots would have been moot. *Hatfield* v. *Board of Canvassers*, 98 W. Va. 41. The United States Supreme Court, in *Aurora City* v. *West*, 74 U. S. 82, speaking of the effect of a former adjudication on facts therein involved, says: "It makes no difference in principle whether the facts from which the court proceeded were proved by competent evidence, or whether they were *admittd* by the parties."

The uncontested ballots are as necessary as the contested ballots to support the judgment of this Court, requiring the board to count for each candidate 3795 votes. If an adjudication is conclusive only in cases where all of the pertinent facts are disputed, then the doctrine of *res judicata* would seldom, if ever, be applied.

JUDGE WOODS concurred in the foregoing note of JUDGE LITZ.