E. L. MORRISON, *Receiver, etc. v.* BANK OF MOUNT HOPE

(CC 648)

Submitted April 28, 1942.  Decided June 9, 1942.

*William L. Lee* and *George Love,* for plaintiff.
*Mahan, Bacon & White* and *File, Scherer & File,* for respondent.

Riley, Judge:

E. L. Morrison, receiver of the Bank of Pax, sought recovery in the amount of $2,721.73 against the Bank of Mt. Hope for fraud and deceit in an action of trespass on the case instituted in the Circuit Court of Fayette County. The trial court sustained a demurrer to plaintiff's declaration, and its rulings were certified here upon the court's own motion.

The following are the pertinent allegations of the declaration, which, for convenience, will be stated in narrative form:

On July 1, 1926, H. F. West and wife, then owners of two lots in the town of Pax, Fayette County, West Virginia, executed a deed of trust, dated July 14, 1926, and recorded in the county clerk's office of Fayette County on July 31, 1926, conveying said lots to C. E. Mahan, Jr., trustee, to secure two negotiable promissory notes, one in the sum of $1500.00, made by West and payable to defendant's order, and the other for $2250.00, made by West and wife, payable to the order of L. S. Tully at the Bank of Mt. Hope. Subsequent thereto two dwelling houses, located on the lots, covered by insurance, were destroyed by fire. West, after collecting the proceeds under the insurance policy, paid both notes to Tully, "the executive vice-president, director and agent of said bank, its active manager, in control and active management of its affairs, and being the sole and exclusive representative of said bank in charge of said transaction for it, and thereunto duly authorized, and who, as such agent of such bank accepted from said West payment in full of both of said notes; and, thereupon the bank, by Tully, its vice-president, authorized to execute release deeds for it and in its behalf, who had exercised such authority over a long period of time, executed a release of the deed of trust on both lots."

The release recites that the defendant is the holder and owner of the notes secured by the deed of trust, and the signature of Tully, "vice-president of said Bank of Mt. Hope, and its common seal are by the order of its board of directors hereunto set." Attached thereto is a notary's

certificate to the effect that Tully, being duly sworn, deposed that he is defendant's vice-president, authorized by defendant to execute and acknowledge deeds and other writings of said defendant, and that the writing was signed and sealed by him "in behalf of said corporation by its authority duly given, and the said L. S. Tully acknowledged the said writing to be the act and deed of said corporation." Tully delivered the release to West, who caused it to be recorded in the county clerk's office.

About November, 1930, West applied to the Bank of Pax for a loan of $2500.00 for the purpose of again erecting a dwelling house on one of the lots (Lot No. 3), and proposed to give a deed of trust on the lot and the building to be erected thereon as security. Before passing on the proposed loan, one Legg, cashier of the Bank of Pax, examined the records in the county clerk's office to ascertain whether there were any liens or incumbrances against Lot No. 3; found the Mahan deed of trust marked "released" on the margin of the page of the record book, and the recorded release. As a matter of precaution, he saw Tully at his office in the defendant bank, explained to him that the Bank of Pax was considering the loan, inquired whether Lot No. 3 was free of the deed of trust lien, and was advised that it was. Legg, having no information to question the validity of the release deed or the recitals therein or the information received from Tully, and relying upon the release and the information, made a loan on behalf of the Bank of Pax of $2500.00 to West, represented by a note from West and wife secured by a deed of trust on Lot No. 3.

On September 3, 1931, the Bank of Pax was closed by the Commissioner of Banking, and plaintiff, Morrison, was appointed receiver thereof. In order to collect the $2500.00. note, plaintiff caused the lot and dwelling house to be offered for sale under the deed of trust, and, no adequate bid having been received, purchased the same, and on March 25, 1932, the trustee executed a deed conveying the property to said receiver.

On February 2, 1933, R. E. Kelly, as conservator of the

Oak Hill National Bank, instituted a suit in chancery in the Circuit Court of Fayette County, alleging that the Oak Hill National Bank was the owner and holder of a note originally in the amount of $2250.00, being a renewal of the original note described in the Mahan deed of trust, which note is alleged to have been assigned by Tully to the Oak Hill National Bank as collateral security for the former's obligations, and praying that the release be set aside in so far as it applied to said note; that the deed of trust from West and wife to secure the Bank of Pax be set aside and cancelled, and the lot with improvements be sold to pay the said debt of the Oak Hill National Bank. The Circuit Court of Fayette County entered a decree in that suit substantially granting the relief prayed for, setting aside the release, the deed of trust securing the Bank of Pax, the deed from Aliff, trustee, to the receiver, in so far as the Oak Hill National Bank's debt was concerned, and decreeing the property be sold to satisfy the claim of said bank. An appeal was taken from this decree to this Court, which affirmed the trial chancellor.

The recitals contained in the deed of release executed in the name of the Bank of Mt. Hope by Tully, the declaration further asserts, were false and fraudulent, made and intended to defraud and deceive the Bank of Pax, and that in reliance thereon, said bank made the loan to West, and sustained loss and damage thereby; and further, that Tully, at the time the release was executed, and the representations made to Legg, was the executive vice-president of the Bank of Mt. Hope, who for many years had been in the active control and management of the bank's affairs and authorized to and did execute practically all, if not all, of the releases executed by it, which were in great numbers and recorded in the Fayette County Clerk's office when Legg made his examination of the records therein.

Counsel for defendant assign four grounds in support of the trial chancellor's rulings, the second and third of which may be consolidated into one: (1) Tully was not acting within the scope, or apparent scope, of his authority in releasing the deed of trust; (2) and (3) the Bank

of Pax was not justified in relying upon the release and the oral statements of Tully, late cashier, in so far as it affected the note of $2250.00, and the allegation to the effect that the former was acting for the defendant bank in making said statements is a mere presumption, conclusion and averment made without supporting facts; and (4) the decree of the Kelly suit is *res adjudicata* and a bar to this action.

Plaintiff's counsel approach the case from an entirely different angle. They say that: (1) This is an action for fraud committed by an agent of a corporation acting within the scope or apparent scope of his authority and it is not a defense that the agent in committing the fraud was acting for his own benefit and the corporation did not profit thereby; (2) the Bank of Pax had the right to rely upon the alleged recitals and representations of the defendant and was under no duty to make inquiry as to their truth or falsity; (3) the allegation that Tully was defendant's sole agent will impute knowledge to it; and (4) finally, the decision in the Kelly case does not bar plaintiff herein.

Because the discussions of the two parties litigant do not meet upon a common ground, it seems convenient to us at the threshold of this discussion to consider plaintiff's first, second and third grounds to see if he has approached this case on what seems to us to be the correct theory; and if so, is the Kelly decision a bar to the recovery which plaintiff seeks?

In the first place, it must be stated that Tully, having assigned the note in question to the Oak Hill National Bank, had no right to execute the release for the bank, since it operated as to both notes. We think it clear that Tully's alleged wrongful conduct was designed to enure to his benefit and not to the defendant bank. May we attach liability therefor to that bank? There is an apparent weight of authority to the effect that a corporation is liable for the fraudulent acts of its officers made within the apparent scope of his authority, though the officer is acting for his own benefit and the corporation does not

receive a benefit therefrom. *Engen* v. *Merchants and Mfgs. State Bank,* 164 Minn. 293, 204 N. W. 963, 43 A. L. R. 610, and note thereto; Id. A. L. R. pages 615-622, inclusive. On the immediate question, defendant's counsel have cited no West Virginia case of contrary holding, and none has come to our attention. If this be a sound rule of law, applying to corporations generally, and we think it is, *a fortiori,* it should apply to a bank, which, in dealing with the public occupies a position of confidence and trust not usually enjoyed by other corporations.

But counsel say that Tully was not acting within the apparent scope of his authority, and the Bank of Pax was not justified in relying upon the recitals contained in the release. If the authority was apparent and there was nothing to place the Bank of Pax on inquiry, the defendant bank's holding Tully out as its sole and active agent in carrying on all of its business and including the execution and releases on its behalf, and the Bank of Pax's reliance thereon creates an agency by estoppel upon which liability can be based, provided the receiver's bank exercised good faith and reasonable prudence. This record discloses nothing which would bring into question that bank's good faith, and whether reasonable prudence was exercised in said bank's reliance upon the recitals contained in the release and the defendant bank's holding Tully out as an officer having fully authority to bind it in its business transactions, resolves itself into the question whether in the instant circumstances the Bank of Pax was under a duty to make inquiry.

In this jurisdiction the rule is well established that one to whom a representation has been made may believe the same to be true and act thereon without making inquiry or investigation to determine the truth thereof. *Staker* v. *Reese,* 82 W. Va. 764, 97 S. E. 641; *Stout* v. *Martin,* 87 W. Va. 1, 104 S. E. 157; *Gall* v. *Cowell,* 118 W. Va. 263, 281, 190 S. E. 130. An exception thereto, requiring inquiry, has been recognized by some courts where there were facts and circumstances present when the false representations were made so as to put the injured party upon his guard

or to cast suspicion upon their truthfulness. *Pustelniak* v. *Vilimas,* 352 Ill. 270, 185 N. E. 611; *Morel* v. *Masalski,* 333 Ill. 41, 164 N. E. 205; *Parker* v. *Ward,* 224 Ala. 80, 139 So. 215.

Code, 38-12-4, enacted in the Code adopted in 1931, requires recordation of an assignment of a lien or the debt secured thereby or, in the alternative, permits the assignor thereof to join the assignee in executing a release of the lien. However, at the time the release involved herein was executed, there was no such requirement. The necessity for the recordation of such an assignment, provided for by Ch. 61, Acts of West Virginia Legislature, 1921, was repealed by the succeeding legislature. See Ch. 61, *Idem,* 1923. The deed of trust, however, disclosed that one of the notes was payable to the order of Tully, and defendant's counsel say that of itself was such a suspicious circumstance that Legg should have been put on inquiry. The recorded release by the defendant bank purported to release that note. Had the bank actually owned and held the note, it could properly have executed the release. The only doubt or suspicious factor which might have arisen in Legg's mind, upon examination of the release, was whether the bank had acquired the note as Tully's assignee. To dissipate that doubt, Legg made inquiry of Tully who verified what the release purported to imply, namely, that the bank had acquired the note which had been paid and discharged and, hence, the right of the bank to execute the release. We find no circumstances in the allegations which would have put Legg on guard that Tully was not telling the truth. To say that Legg should not have relied upon the representations made by Tully is to say that a member of the public should have been suspicious of one in whom the bank itself supposedly reposed confidence, or, at least, by the alleged placement of Tully as the bank's chief officer would lead the public to believe it considered Tully trustworthy. While the allegations of the declaration show that such confidence was not warranted, we see no reason for Legg to have pursued further his investigation. Of what avail would such action

have been? Tully, the original payee of the note and the allegedly chief and trusted officer of the bank—the person who was apt to know more concerning the entire transaction than anyone else—had verified the implications of the release and had dissipated the doubt occasioned by the trust deed and the release. Where, then, in the exercise of reasonable prudence should the Bank of Pax be required to make further inquiry? Certainly not to other officers or members of the board of directors of the defendant bank, because under the allegations of the declaration, Tully was in sole and active control and management of the defendant's affairs, and presumably the one person, representing the defendant bank, who was informed, above all others, as to the securities held by the bank and the releases executed on its behalf, and if Legg had asked to see the bank's records, the bank rightfully could, and in all probability would, have refused to let him do so. Moreover, inquiry of West himself would have resulted only in West's response that the note had been paid to the bank, thereby confirming what the release implied and also what Tully had verbally represented. So we think the allegations of the declaration do not show any negligence or lack of reasonable prudence on the part of either Legg or the bank which he represented during the course of his investigation.

But defendant contends that plaintiff is barred by reason of the decision of this Court in the case of *Kelly, Conservator,* v. *Bank of Mount Hope,* 117 W. Va. 260, 185 S. E. 215, wherein the liability of the Bank of Mount Hope to plaintiff receiver was neither raised by the pleadings nor passed upon by this or the trial court. The question before this Court in that case was whether the release was valid and effective against Oak Hill National Bank, an innocent holder of a note in due course. In *State ex rel. Lambert* v. *Board of Canvassers,* 107 W. Va. 109, 147 S. E. 484, this Court held in point 4 of the syllabus, "Estoppel of a judgment does not extend to a matter not directly in issue, although it may have arisen in the case collaterally and have been judicially passed on." See also *State* v. *McEl-*

*downey,* 54 W. Va. 695, 45 S. E. 650. It follows the Kelly decision, under the allegations of the declaration, does not bar the instant action.

For the foregoing reasons, the rulings of the trial court should be reversed.

*Rulings reversed.*